# EXHIBIT "B"

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

*Filed and Attested by the Office of Judicial Records 27 MAY 2020 11:40 am A. SILIGRINI*

PROTHONOTARY

JUDICIAL DISTRICT OF PENN

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| Raja Rajan | Alastair Crawford |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 2009 Chestnut Street 3rd Floor, Philadelphia, PA 19103 | 48 Lamont Road London OHX SW |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| Mathu Rajan | Patrick Miles |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 2009 Chestnut Street 3rd Floor, Philadelphia, PA 19103 | Model Farm, Upper Winchendon, Aylesbury Bucks   HP18 0EP United Kingdom |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | N/A |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 2 | ☒ Complaint    ☐ Petition Action    ☐ Notice of Appeal ☐ Writ of Summons    ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less ☒ More than $50,000.00 | ☒ Arbitration ☒ Jury ☐ Non-Jury ☐ Other: | ☐ Mass Tort ☐ Savings Action ☐ Petition | ☐ Minor Court Appeal ☐ Statutory Appeals ☐ Commerce (Completion of Addendum Required) | ☐ Settlement ☐ Minors ☐ W/D/Survival |

CASE TYPE AND CODE (SEE INSTRUCTIONS):

2L - Libel and slander
4F - Fraud
2E - Wrongful use of Civil Process

STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS)

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | IS CASE SUBJECT TO COORDINATION ORDER? | |
|---|---|---|
| | Yes | No |
| | ☐ | ☐ |
| | ☐ | ☐ |
| | ☐ | ☐ |

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant:

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| Mathu and Raja Rajan pro se | 2009 Chestnut Street 3rd Floor Philadelphia, PA 19103 |

| PHONE NUMBER | FAX NUMBER |
|---|---|
| 215-391-4200 | 215-405-2778 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| | 7raja.rajan7@gmail.com, mattrajan1471@gmail.com |

| SIGNATURE | DATE |
|---|---|
| | May 26, 2020 |

01-101 (Rev. 6/08)

Case ID: 200501648

# IN THE COURT OF COMMON PLEAS IN
# PHILADELPHIA COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| MATHU RAJAN and  RAJA RAJAN<br><br>Plaintiffs,<br><br>v.<br><br>ALASTAIR CRAWFORD and PATRICK MILES<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No.<br><br>JURY TRIAL DEMANDED |

### N O T I C E  TO  DEFEND

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Philadelphia Bar Association Lawyer Referral & Information Service
1101 Market Street, 11th Floor
Philadelphia, PA 19107
215-238-6333

Case ID: 200501648

<u>Complaint</u>

The Plaintiffs Mathu and Raja Rajan are individuals who are members of the Board of Directors of Stream TV Networks, Inc. (the "Company") and also are the Company's CEO and COO/General Counsel, respectively.  Plaintiffs Mathu Rajan and Raja Rajan are together referred to herein as the "Plaintiffs." Defendants, led by Defendant Alastair Crawford, have orchestrated an elaborate plan to "take over" the Company.  The claims herein are based on those improper actions by Defendant Alastair Crawford and other Defendants.  The Plaintiffs seek Trial by Jury of this matter.

The Company is a Delaware corporation headquartered in Philadelphia, Pennsylvania.

Most, if not all, of the Defendants are shareholders and/or investors in the Company.  Some of the Defendants also acted as investment brokers to help the Company raise investment capital in the past.  This Complaint asserts claims based on Defendant Alastair Crawford's and other Defendants' actions in violation of other applicable laws concerning tortious interference with prospective economic advantages, defamation, claims for abuse of process, claims for fraud, and claims for civil conspiracy.

## Table of Contents

**IN THE COURT OF COMMON PLEAS IN** ................................................................... 1

**PHILADELPHIA COUNTY, PENNSYLVANIA** ..................................................... 1

**PRELIMINARY STATEMENT** ........................................................................... 4

**PARTIES** .......................................................................................................... 7

**JURISDICTION AND VENUE** ........................................................................... 7

**FACTUAL ALLEGATIONS** ............................................................................... 8

**Defendants' executed investment documents promised and required that any legal suit arising out of their investment would be exclusively brought in Philadelphia, Pennsylvania which is the headquarters location of the Company.  In spite of those promises, Defendants raised numerous unfounded allegations in Delaware instead of Philadelphia despite the fact they promised to do so, in essence, they (the investors in the Company who are Defendants in the Delaware Case) conducted their own due diligence before their respective investments.  They also promised to**

Case ID: 200501648

**indemnify and hold harmless the Company from lawsuits arising out of their promises to the Company.** ..................................................................................................................................... 8

**Defendant Alastair Crawford promised in his investment brokerage contract that he would use only the Company information that was provided to him in writing and not make further representations to raise money.  He breached those written promises.** ........................................... 14

**Defendant Alastair Crawford took unilateral matters into his own hand and disrupted the work performance of the Plaintiffs as well as Company operations without notice in spite of common sense and counsel's warnings to him. Defendant Crawford has provided to the Plaintiffs numerous of text messages of his intent and desire for secrecy and preference for his investors regardless of the harm to other investors of the Company.  Defendant Crawford knew many of his allegations were without any evidence, yet he communicated them to other shareholders and employees to disrupt the Plaintiffs' efforts.** .................................................................................. 15

**The Company believes that Defendant Alastair Crawford took many actions because he intended that he and some of his colleagues to play very prominent roles in the Company and control the Companies direction to the extreme detriment of the Plaintiffs.   Defendant Alastair Crawford actually sent numerous WhatsApp messages and emails demonstrating his desire to control the Company and damage the Plaintiffs and in a manner that was potentially improper and secretive.** ....................................................................................................................................... 17

**Specifically, Defendant Hadron Master Fund's principal manager Marco D'Attanasio, worked with the Company to attempt to close on an investment by a large Middle East fund referred to in the Delaware lawsuit.  He and they actually met with that large Middle East fund and know that the allegations in the Delaware lawsuit are inaccurate.   In fact, Mr. D'Attanasio was going to set up a Hadron 2 fund to co-invest with the Middle East fund in a tax efficient manner. Defendant Alistair Crawford actually met with Defendant Hadron in order to help raise money to close investments by the Middle East fund that he alleges in the Delaware Case. The Middle East fund has spent many hours with the Company and had its TV technology in their lobby, demonstrating the technology to all visitors to their company.** ......................................................... 25

**The Company's fund raising dramatically fell in Q1 of 2020 by nearly 75% from the same quarter of 2019.  The Company asserts that much of its operations and efforts with prospective investors have been stopped or delayed.  The Company believes all of those actions were negatively and severely impacted by numerous actions by Defendants.** .......................................... 26

**COUNT I** .............................................................................................................................................. 27

(Tortuous Interference against Alastair Crawford) ............................................................................ 27

**COUNT II** ............................................................................................................................................. 28

(Defamation against Alastair Crawford) ........................................................................................... 28

**COUNT III** ........................................................................................................................................... 29

(Fraud against Alastair Crawford) ..................................................................................................... 29

**COUNT IV** ........................................................................................................................................... 29

(Abuse of Process against Alastair Crawford) .................................................................................. 29

**COUNT V** ............................................................................................................................................. 30

(Fraud against All Defendants) .......................................................................................................... 30

Case ID: 200501648

**COUNT VI**................................................................................................................31

  (Abuse of Process against All Defendants)................................................................31

**COUNT VII**...............................................................................................................31

  (Defamation against All Defendants) .......................................................................31

**COUNT VIII**..............................................................................................................32

  (Civil Conspiracy against All Defendants) ...............................................................32

## PRELIMINARY STATEMENT

1.    This  Complaint is largely based on the harm caused to the Plaintiffs by the allegations made in and surrounding a claim filed by many of the Defendants in Delaware Chancery Court C.A. No. 2020-0004-JTL ("Delaware Case") and numerous other actions by many of the Defendants to act unilaterally which also caused the Plaintiffs serious harm.

2.    In the Delaware Case, only some of the officers and directors, including the Plaintiffs, and some employees and consultants of the Company are Defendants.; also, the Company was not a named Defendant in the Delaware Case, which the Company believes was decided specifically by intention and design by Defendant Alastair Crawford.

3.    The Company is not a Defendant in the Delaware Case at the time of this filing.

4.    The Company is not a Plaintiff in this case.

5.    Nevertheless, the Company has suffered harm as a result of the Plaintiffs actions in and surrounding the Delaware Case.

6.    The Plaintiffs were raising capital and meeting many prospective investors and customers on behalf of the Company, and the Delaware Case, and the false allegations made therein, stopped or slowed the Plaintiffs' efforts in that regard.

7.    The Plaintiffs in the Delaware Case raised various allegations that were untrue, and in the original Complaint in that case named by formal name some of the prospective investors and

Case ID: 200501648

customers which they should have known would have impeded the Plaintiffs' efforts on behalf of the Company in that regard.

8.    The Delaware Case's details were also  published on the web by an article at Bloomberg in their law section in an article entitled "Stream TV Officials Hit With Suit Over Alleged Takeover Plot (1)" and that article is at https://news.bloomberglaw.com/corporate-governance/stream-tv-officials-hit-with-lawsuit-over-alleged-takeover-plot.

9.    Defendants specifically intended to make the Delaware Case very public in order to accomplish their objectives and as stated more fully below, to force investors to talk to them before any kind of investment.

10.    Several of the Defendants want to use the Delaware Case largely to take over the management and direction of the Company and to destroy the personal and professional reputations of the Plaintiffs.

11.    The Plaintiffs not including Alastair Crawford in the Delaware Case should have known or knew their case would be very widely publicized and known.

12.    As stated in the full recitation of the facts, the lead Plaintiff filed the Delaware Case, then instructed his counsel to withdraw the case, and then later instructed his counsel to ignore his instructions to withdraw the case when the negotiations to resolve various the parties' differences did not go in the lead Plaintiff's (Delaware Case) direction.

13.    The lead Plaintiff in the Delaware Case, namely Alastair Crawford, desired to invest additional monies into the Company but on a secret basis so he and his fellow investors would gain a variety of securities advantages over many other investors.

14.    Defendant Alastair Crawford also was negotiating for all of his prior equity investments in the Company to be changed to debt with interest thereon accruing retroactively from the date

Case ID: 200501648

of the original investment; It was only when those demands were not likely to succeed in any out-of-court resolution that he filed the lawsuit for the Delaware Case.

15.    In fact, Defendant Crawford's attorney in the Delaware Case wrote to Plaintiff Raja Rajan as to Defendant Crawford's intentions to avoid the lawsuit. (A true and correct copy of an email from Defendant Crawford's attorney is attached hereto as "**Exhibit A**").

16.    In fact, Defendant Crawford's attorney wrote what Defendant Crawford wanted for the out of court resolution and indicated that:

> …We understand that time is of the essence and we are ready to discuss and finalize these agreements as soon as possible.  Please provide confirmation that you agree to proceed with resolution of the outstanding claims on the terms set forth in these documents on or before December 26, 2019.

17.    Defendant Crawford's attorney actually provided an actual proposed out of court settlement document which is attached hereto as **"Exhibit B"**.

18.    Plaintiff Raja Rajan indicated by email on or about December 26, 2019 that the terms of the negotiation have changed "radically" and "look very different" from the terms last discussed with Defendant Alastair Crawford.

19.    Those actions by Defendant Alastair Crawford and the other Defendants in this lawsuit are evidence of their primary motivation to take over the direction of the Company through any means possible regardless of the negative impact to the other shareholders of the Company.

20.    As further evidence of Defendant Mr. Alastair Crawfords desire to take over the Company is that he was intimately involved in discussions with the secured debt holders of the Company and promoted a "side letter" which was secret in nature.

21.    As part of that side letter Defendant Mr. Alastair Crawford negotiated for his group to receive 4,000,000 shares and 2,000,000 warrants of a new company that was going to be set up in lieu of the current Company.

Case ID: 200501648

22.    In addition, as part of that secret side letter Defendant Mr. Alastair Crawford also

negotiated for his legal fees incurred in the Delaware Case against the Plaintiffs herein to be

debt in the new company with interest and security of collateral.

23.    As detailed below, the actions of the Defendant have continued to cause harm to the

Plaintiffs.

## PARTIES

24.    The Plaintiffs Mathu and Raja Rajan are individuals who have their business addresses at

2009 Chestnut Street, Third Floor, Philadelphia, PA 19103 and are members of the Board of

Directors of Stream TV Networks, Inc. (the "Company") and the Company's CEO and

COO/General Counsel, respectively.  Plaintiffs Mathu Rajan and Raja Rajan are together

referred to herein as the "Plaintiffs." The Company is a Delaware corporation headquartered in

Philadelphia, Pennsylvania.

25.    All of the Defendants are shareholders and/or investors in the Company.

26.    Defendant Alastair Crawford is an adult individual who has invested in the Company

several times and also acted as an investment broker for the Company, receiving cash and

equity compensation for his efforts.  He resides at 48 Lamont Road, London SW10 0HX

United Kingdom.

27.    Defendant Patrick Miles is an adult individual who has invested in the Company and also

was an investment broker and received cash and equity compensation for his efforts.  He

resides at Model Farm, Upper Winchendon, Aylesbury, Bucks   HP18 0EP United Kingdom.

## JURISDICTION AND VENUE

28.     Jurisdiction and venue are entirely proper in the Philadelphia Court of Common Pleas as

all Plaintiffs maintain their business addresses in Philadelphia and some of them are officers

Case ID: 200501648

and directors of the Company which has its headquarters in Philadelphia and the conduct that

forms the basis of the claims harmed the Plaintiffs in the Philadelphia headquarters.

## FACTUAL ALLEGATIONS

**Defendants' executed investment documents promised and required that any legal suit arising out of their investment would be exclusively brought in Philadelphia, Pennsylvania which is the headquarters location of the Company.  In spite of those promises, Defendants raised numerous unfounded allegations in Delaware instead of Philadelphia despite the fact they promised to do so, in essence, they (the investors in the Company who are Defendants in the Delaware Case) conducted their own due diligence before their respective investments.  They also promised to indemnify and hold harmless the Company from lawsuits arising out of their promises to the Company.**

29.   All of the above averments are incorporated herein by references.

30.   The Defendants are investors in the Company as stated, and they executed investment

documents for their respective investments.

31.   Though they were Plaintiffs in the Delaware Case the Plaintiffs in this action did not sue

the following individuals though they were also mostly investors in the Company.  They are:

Adam Bidwell, Adrian Holmes, Alan Wood, Amlin Investments Ltd., Andrew Finnemore

Capon, Andrew Slinger, Anthony Wigram, Arlington Hanson Holdings Luxembourg Sarl,

Batten Trustee Ltd. As Trustee Of The Arrow Trust, Charles Caminada, Charles Birchall,

Clarmond Wealth Ltd., David Taylor, Dear Spa, Eamonn Manson, Edward Miles, Framse

Holding Gmbh, Guy Chisenhale-Marsh, Guy Toller, Hadron Master Fund, Hallfield Holdings

S.A., Hugh Holland, Jacopo Franzan, Joel Kallan, Kathryn Toller, Keith Young, Keith

Marsden, Keith Merrick, Lapis Ventures Sac Ltd., Leman Management Nominees Ltd.,

Leonardo Zampatti, Londer Securities S.A., Mark De Candole, Mark Dyer, Nicholas

Wentworth-Stanley, Oliroma Holding Srl, Pepper Grove Holdings Ltd., Puddles Ii Ltd.,

Richard Milligan-Manby, Rupert Corfield, Simon Booth, Tarlton Parsons Iii, The Michael

Case ID: 200501648

Haggiag Family Trust, Timothy Simond, Tracy Pernice, Victoria Slinger, Walmer Capital Ltd., AND Windsor International Corp.

32.   One individual put his name as a Plaintiff in the Delaware Case when he was never even personally an investor in the Company.  Rather he may have invested through some entity but as stated sued in the Delaware Case in his own name.  That only shows further evidence of the abuse of that process in the Delaware Case.  That individual is Roy Grainger Williams.

33.   The investment documents provide, among other things, the following:

> The parties hereto (1) agree that any legal suit, action or proceeding arising out of or relating to this Subscription Agreement will be instituted exclusively in the Pennsylvania Court of Common Pleas, County of Philadelphia, or in the United States District Court in Philadelphia for the Eastern District of Pennsylvania, (2) waive any objection which the parties may have now or hereafter to the venue of any such suit, action or proceeding, and (3) irrevocably consent to the jurisdiction of the Pennsylvania Court of Common Pleas, County of Philadelphia, and the United States District Court in Philadelphia for the Eastern District of Pennsylvania in any such suit, action or proceeding. Each of the parties hereto further agrees to accept and acknowledge service of any and all process which may be served in any such suit, action or proceeding in the Pennsylvania Court of Common Pleas, County of Philadelphia, or in the United States District Court in Philadelphia for the Eastern District of Pennsylvania and agrees that service of process upon it mailed by certified mail to its address will be deemed in every respect effective service of process upon it, in any such suit, action or proceeding.
>  Nearly all of the Defendants have signed subscription documents which contain the previous language and they were also provided private placement memoranda ("PPM").

34.    Defendant Crawford et. al. sued in the Delaware case the Plaintiffs in the current action and as part of the relief claiming, among other things, that the Rajan Plaintiffs should be ordered to change the Company's governance procedure, restructure its board of directors and amend Stream TV Networks, Inc articles of incorporation and/or bylaws.

35.   One further indication of Defendant's abuse of process and other similar actions is Defendant sued Mr. Suby Joseph in Delaware even though he was never an officer or director of the Company.

Case ID: 200501648

36.   Defendant's also sued the elderly parents of Mathu and Raja Rajan in order to get more leverage in their lawsuit against the Rajan Family.

37.   The subscription agreement provides the following, but not limited to the following, "Representations and Warranties" (references to Purchaser is references to investors in the Company which are also Defendants in this action):

    a.   "…. Purchaser and the Purchaser's attorney, accountant, purchaser representative and/or tax advisor, if any, have received and <u>have carefully reviewed</u> prior to the date hereof…." (emphasis added);

    b.   "All documents, records, and books pertaining to the investment in the Securities including, but not limited to, all information regarding the Company and the Securities, have been made available for inspection and <u>reviewed by the Purchaser and its advisors</u>, if any." (emphasis added);

    c.   "The Purchaser and its advisors, if any, have had a reasonable opportunity to ask questions of and receive answers from the Company's officers and any other persons authorized by the Company to answer such questions, concerning, among other related matters, the Sale, the Securities, and the business, financial condition, results of operations and prospects of the Company and <u>all such questions have been answered by the Company to the full satisfaction of the Purchaser and its advisors</u>, if any." (emphasis added);

    d.   "In evaluating the suitability of an investment in the Company, the **<u>Purchaser has not relied upon any representation or other information</u>** (oral or written) as contained in documents so furnished to the Purchaser or its advisors, if any, by the Company in writing." (emphasis added);

Case ID: 200501648

e.   "…<u>Purchaser understands</u> and agrees that purchase of the Securities is a <u>high risk</u>
<u>investment</u> and the Purchaser is able to afford an investment in a <u>speculative</u>
<u>venture having the risks and objectives of the Company</u>…" (emphasis added);

f.   "…The Purchaser understands that there is no public market for the Common
Stock to be issued in the Sale and the <u>Company has no intention of seeking an</u>
<u>active trading market for these Securities</u>." (emphasis added);

g.   "The Purchaser has adequate means of providing for such Purchaser's current
financial needs and foreseeable contingencies and <u>has no need for liquidity from</u>
<u>its investment in the Securities for an indefinite period of time</u>." (emphasis
added);

h.   "The <u>Purchaser is aware</u> that an investment in the Securities involves <u>a number of</u>
<u>very significant risks</u> and has carefully read and considered the matters set forth in
the Notices and Risk Factors Sections as reflected in the Memorandum and
understands <u>any of such risk may materially adversely affect the Company's</u>
<u>operations and future prospects</u>." (emphasis added);

i.   "The Purchaser and its advisors, if any, <u>have had the opportunity to obtain any</u>
<u>additional information</u>, to the extent the Company had such information in its
possession or **could acquire it without unreasonable effort or expense**,
necessary to satisfy its  questions in connection with the purchase of the Securities
and have had the opportunity to have representatives of the Company provide
them with such additional information regarding the terms and conditions of this
particular investment and the financial condition, results of operations, business
and prospects of the Company deemed relevant by the Purchaser or its advisors, if

Case ID: 200501648

any, and all such requested information, to the extent the Company had such information in its possession or could acquire it without unreasonable effort or expense, has been provided by the Company in writing to the <u>full satisfaction of the Purchaser and its advisors</u>, if any." (emphasis added);

j. "The Purchaser has significant prior investment experience, including investment in non-listed and non-registered securities. **<u>The Purchaser has a sufficient net worth to sustain a loss of its entire investment in the Company</u>** in the event such a loss should occur. The Purchaser's overall commitment to investments which are not readily marketable is not excessive in view of the Purchaser's net worth and financial circumstances and the purchase of the Securities will not cause such commitment to become excessive. This investment is a suitable one for the Purchaser." (emphasis added);

k. "The <u>Purchaser is satisfied that it has received adequate information with respect to all matters which it or its advisors</u>, if any, consider material to its decision to make this investment." (emphasis added);

l. "…**<u>Purchaser acknowledges that any and all estimates or forward-looking statements or projections, if any, provided to Purchaser were prepared by the Company in good faith, but that the attainment of any such projections, estimates or forward-looking statements cannot be guaranteed</u>**, will not be updated by the Company and **<u>should not be relied upon</u>**." (emphasis added);

m. "…Purchaser acknowledges that the Securities have not been recommended by any federal or state securities commission or regulatory authority. In making an investment decision, **<u>investors have relied on their own examination of the</u>**

Case ID: 200501648

**Company and the terms of the Sale, including the merits and risks involved**." (emphasis added);

n.   "Investors should be aware that they will be required to <u>bear the financial risks of this investment for an indefinite period of time</u>." (emphasis added);

38.   In the subscription agreements the Defendants/investors/purchasers also agreed to: "The Purchaser agrees to indemnify and hold harmless the Company and each of their respective officers, directors, managers, employees, agents, attorneys, control persons and affiliates from and against all losses, liabilities, claims, damages, costs, fees and expenses whatsoever (including, but not limited to, any and all expenses incurred in investigating, preparing or defending against any litigation commenced or threatened)…" (emphasis added)

39.   Demand of the indemnity and hold harmless requirement have been made by the Company and Defendants have not responded to such Demand favorably.

40.   In the subscription agreements the Defendants/investors/purchasers also agreed to abide by confidentiality requirements with the following language:

41.    "The Purchaser acknowledges and agrees that any information or data the Purchaser has acquired from or about the Company not otherwise properly in the public domain, was received in confidence. The Purchaser agrees not to divulge, communicate or disclose, except as may be required by law or for the performance of this Subscription Agreement, or use to the detriment of the Company or for the benefit of any other person or persons, or misuse in any way, any confidential information of the Company, including any trade or business secrets of the Company and any business materials that are treated by the Company as confidential or proprietary, including, without limitation, confidential information obtained by or given to the Company about or belonging to third parties." (emphasis added)

Case ID: 200501648

42.   In spite of the confidentiality obligations some of the Defendants filed an original complaint in the Delaware Case naming potential investors and potential business partners by name.

43.   Several of the potential investors and potential business partners that the Defendants named in the Delaware Case are very large in size (billions) and by naming them by name instead of just referring to them with some kind of broad description Defendants caused harm to the Company.

44.   It is noted that in the amended complaint Plaintiffs in the Delaware Case removed the references to specific potential investors and potential business partners by name.

**Defendant Alastair Crawford promised in his investment brokerage contract that he would use only the Company information that was provided to him in writing and not make further representations to raise money.  He breached those written promises.**

45.   As mentioned, one of the Defendants, namely Alistair Crawford, was also an investment broker and received both cash commissions and equity commissions for investments in the Company made by some of his colleagues and his network.

46.   In the Crawford Brokerage agreement, he agreed to some of the following particulars:

   a.   Only to use the written documents provided by the Company;

   b.   To indemnify and hold harmless the Company for any of Alastair Crawford's activities arising from the investment transactions;

   c.   That Alastair Crawford would not speak for the Company but rely on written documentation from the Company.

   d.   That disputes arising from the Crawford Brokerage agreement shall be **exclusively** within the jurisdiction of Philadelphia Pennsylvania.  In spite of that

Case ID: 200501648

fact, Defendants brought the Delaware case alleging their investments were a direct result of falsities by the Plaintiffs in this action.

**Defendant Alastair Crawford took unilateral matters into his own hand and disrupted the work performance of the Plaintiffs as well as Company operations without notice in spite of common sense and counsel's warnings to him. Defendant Crawford has provided to the Plaintiffs numerous of text messages of his intent and desire for secrecy and preference for his investors regardless of the harm to other investors of the Company.  Defendant Crawford knew many of his allegations were without any evidence, yet he communicated them to other shareholders and employees to disrupt the Plaintiffs' efforts.**

47.   Defendant Alastair Crawford actually went unannounced to one of the Company's wholly owned subsidiaries without any approval by the board of directors or any management personnel and spent a great deal of time speaking to employees there.

48.   The board of directors of the Company thought the actions of Defendant Alastair Crawford were so potentially disruptive and detrimental to the Company that the Company caused the issuance of a Cease and Desist letter to Defendant Alastair Crawford.

49.   That Cease and Desist letter is attached hereto as **Exhibit C**.

50.   The Crawford Cease and Desist letter sent to Alistair Crawford warned him that " If you continue to contact Stream TV's employees, business partners (including but not limited to subsidiaries), or actual and/or prospective vendors without authorization from Stream TV's senior management, Stream TV may take legal action against you. Such action may include claims for injunctive and equitable relief, and money damages."

51.   Mr. Crawford promised the Company that he would no longer do the actions warned against in the Crawford Cease and Desist letter sent to Alistair Crawford.

52.   In spite of the warnings in Crawford Cease and Desist letter sent to Alistair Crawford and Mr. Crawford promises, he still contacted former, existing and retired employees.

Case ID: 200501648

53.    Many of the employees were shaken by Mr. Crawford's unilateral actions and their morale in the Company was severely damaged.

54.    Defendant Alastair Crawford undertook weeks of negotiations with the Plaintiffs before he and other Defendants filed suit in the Delaware Case.

55.    When Defendant Alastair Crawford's negotiations were not as fast as he liked he tried to increase his leverage by filing the original Complaint in the Delaware Case on a Saturday.

56.    When Defendant Alastair Crawford wanted to continue negotiations, he actually instructed his attorney to pull back the Complaint initiating the Delaware Case so that he could conduct further negotiations.

57.    Defendant Alastair Crawford wrote to a third party indicating that settlement negotiations were going well and wrote "I'm heading up the litigation against stream and we are in the final stages, it seems, of a very satisfactory settlement." (emphasis added)

58.    Defendant Alastair Crawford negotiated with Plaintiff Raja Rajan for several weeks and his desire to use the potential litigation/Delaware Case is reflected in several of his text messages.

59.    Several of the text messages from the Defendant Alastair Crawford also reflect what he wanted to do for himself and his colleagues that were improper and certainly immoral.

60.    Defendant Alastair Crawford wanted to "secretly" invest further monies into an entity that was the Company's first lienholder and not tell the second lienholder about that investment ahead of him in terms of lien priority; the reason that Defendant Alastair Crawford gave for that potential secrecy was alleged impropriety to him by the second lienholder.

Case ID: 200501648

61.   As stated above, Defendant Alastair Crawford's intentions are mentioned in his attorney's direct communication with Defendant Raja Rajan and the proposed term sheet to avoid the Delaware Case litigation.

62.   Similarly, Defendant Alastair Crawford made numerous allegations to existing investors and employees that were false and very harmful to the Company and the Plaintiffs herein.

63.   Even as late as March of 2020 Defendant Alastair Crawford strongly criticized a contract the Company obtained with a large automotive venture willing to invest monies into the Company in exchange for an opportunity to commercialize its technology in the automotive space; the Company believes that Defendant Alastair Crawford's strong criticism to investors demonstrates his desires of taking over the Company and him personally playing a prominent role in the Company going forward.

**The Company believes that Defendant Alastair Crawford took many actions because he intended that he and some of his colleagues to play very prominent roles in the Company and control the Companies direction to the extreme detriment of the Plaintiffs.   Defendant Alastair Crawford actually sent numerous WhatsApp messages and emails demonstrating his desire to control the Company and damage the Plaintiffs and in a manner that was potentially improper and secretive.**

64.   Some of the pertinent points of the text messages sent by Defendant Alastair Crawford are:

    a.   He wanted to invest an additional USD $1 million in the Company

    b.   He wanted his demanded settlement points agreed to as early as December 7, 2019 otherwise he threatened to file this Complaint in the Delaware Case (the Delaware Case was e-filed on January 3, 2020 – Defendant Alastair Crawford instructed his lawyers to pull the lawsuit on January 5, 2020, on or near the same day he instructed his lawyers to ignore his instructions to stop the lawsuit).

Case ID: 200501648

c. "Raja I trust you understand that this weekend was an opportunity to resolve this quietly so that the process could be stopped in its tracks. The last ten days have been mixed messages of 95% agreement but nothing tangible. <u>I'm not making a threat, we sent you a draft before we filed so you could preempt and seek a private settlement that preserved business value</u> and provided you a life line, but I feel you keep seeking to use settlement as a delay process, either you do or you do not want to settle, either you agree to relinquish the 10x or you don't etc, <u>if you do then it would be prudent to settle quietly and quickly</u>. I'm not setting deadlines; the deadlines are there already. You already pushed this to the wire and beyond. <u>If you want to negotiate you need to do so today</u>." (emphasis added)

d. As early as December 7, 2019, Defendant Alastair Crawford expressed that the potential new money of USD $1 million and USD $4 million as well as his equities and his colleagues' equities would be converted to debt in his insistence for out-of-court resolution.

e. Defendant Alastair Crawford confirmed on December 8, 2019 that even his old equity investments and those of his colleagues would be converted from equity to debt and he wanted his prior investment documents voided and nullified.

f. Defendant Alastair Crawford also confirmed on December 8, 2019 that he demanded his equity investments, which will be converted into debt, will have the same interest rates of the second lienholder who has lent the Company over USD $60million.

Case ID: 200501648

g.  Defendant Alastair Crawford also had specific proposals as to possible new members of the board of directors of the Company; several of his proposed members are Plaintiffs in the Delaware Case.

h.  On December 18, 2019, Defendant Alastair Crawford confirmed that he would not sign a non-disclosure agreement even though the Plaintiffs wanted to protect privacy of the names of individual investors in light of a potential lawsuit with Defendant Alastair Crawford.

i.   He wrote, on or about January 3, 2020, that "I cannot live with our original investment sitting behind hawk who themselves played a hand in this deception. No way."

j.  On January 5, 2020, Defendant Alastair Crawford indicated that his old equity investments converted to debt would have a 24% interest rate but calculated retroactively.

k.  On that same date he confirmed that the new money would an interest rate of 30%.

l.  On January 6, 2020, Defendant Alastair Crawford wrote that he wanted a 10% commission for his investors for the new monies he wanted to bring into the Company.

m.  On January 6, 2020 Defendant Alastair Crawford confirmed the only way the Company could raise money was his money into the first lienholder secretly.

n.  On the same date he confirmed the second lienholder would not be told about their desire to put in USD $30 million into the first lienholder without telling the second lienholder until a later date.

Case ID: 200501648

o.   The Defendant Alastair Crawford confirmed his planned secrecy by writing "This is new money; Bob (the principal of the second lienholder) will be <u>told</u> about it <u>at the right time</u>". (emphasis and explanation added)

p.   The only explanation that Defendant Alastair Crawford gave for not telling the second lienholder of his plans to secretly place additional monies ahead of him is that he was not told by the second lienholder of his terms; Defendant Alastair Crawford wrote "Like he told me about his deal" implying he was not told the details of the second lienholders investment documents.

q.   On January 6, 2020 Defendant Alastair Crawford explained that he did not expect his lawsuit (Delaware Case) would be picked up so quickly by a reporter and a settlement can be quickly reached before his lawsuit is more widely reported.

r.   On January 7, 2020, Defendant Alastair Crawford wrote "So <u>now the company is going bust this week</u> because everyone else has had enough. Now you get nothing." (emphasis added) (spelling error corrected)

65.   The positions regarding the second lienholder by Defendant Alastair Crawford are surprising in that the second lienholder has invested over USD $60 million in the Company.

66.   The Company has been harmed by Defendant Alastair Crawford's and other Defendants' actions and statements to the second lienholder specifically.

67.   One of the Company officer's explained to Defendant Alastair Crawford that his desire for secrecy was "morally wrong" and his desired actions are a complete lack of transparency.

68.   The Company officer further explained to Defendant Alastair Crawford that his alleged justification for the secrecy was participating in a potential action that is furthering lack of

Case ID: 200501648

transparency and harm to a variety of other shareholders without any good or legitimate business reason.

69.    As stated above, the Delaware Case was reported on the web on or around January 6, 2020 by Bloomberg Law with an article entitled "Stream TV Officials Hit With Suit Over Alleged Takeover Plot (1) ".

**Defendants made numerous allegations which were openly and blatantly wrong and rose to the level of knowing misrepresentation and or fraud.**

70.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraph 163 and in their amended complaint in the Delaware Case they no longer mention the entity by name but they refer to them anyway in paragraph 227; those allegations as stated are inaccurate and untrue.

71.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraph 119 and in their amended complaint the entity is not named nor referenced; those allegations as stated are inaccurate and untrue and Defendants own actions caused the alleged harm to Company.

72.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraphs 5, 65, 78, 85, 87 and in their amended complaint the entity was also mentioned by name in paragraphs 5, 134 and 136; those allegations as stated are inaccurate and untrue.

73.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraphs 79 and 85 through 89 and in their amended complaint the entity was also mentioned by name in paragraphs 128 and 134 through 138; those allegations as stated are inaccurate and untrue.

Case ID: 200501648

74.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraphs 65, 119 and 136 and in their amended the entity is not named nor referenced; those allegations as stated are inaccurate and untrue.

75.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraphs 5, 65 and 82 and in their amended complaint in the Delaware Case they also mention the entity by name in paragraphs 5, 114, 128, 131 and 136; those allegations as stated are inaccurate and untrue.

76.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraphs 5, 65 and 79 through 84 and in their amended complaint in the Delaware Case they also mention the entity by name in paragraphs 5, 114, 127 through 130, 132 and 135; those allegations as stated are inaccurate and untrue.

77.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraphs 79, 82 and 90 and in their amended complaint in the Delaware Case they also mention the entity by name in paragraphs 128, 130, 131 and 139; those allegations as stated are inaccurate and untrue.

78.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraph 5 and in their amended complaint in the Delaware Case they also mention the entity by name in paragraph 114; those allegations as stated are inaccurate and untrue.

79.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraph 65, 75 through 77, 82, 159 and 160 and in their amended complaint in the Delaware Case they also mention the entity by name paragraphs 124 through 126, 131, 216 and 217; those allegations as stated are inaccurate and untrue.

Case ID: 200501648

80.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraphs 5, 79, 99, 100, 108, 110 through 113, 122 through 129, 131 through 135, 137 and 138 and in their amended complaint in the Delaware Case they also mention the entity by name in paragraphs 5, 128, 148 through 150, 152, 158, 160 through 163, 172, 174 through 183, 185 through 189, and 191 through 193; they mention a member of the entity by name in the original Complaint filed in paragraphs 108 and 111 they mention the member in the amended complaint in paragraphs 158 and 161; those allegations as stated are inaccurate and untrue.

81.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraphs 12, 65, 67 through 69, 72 through 75, 77, 79, 82, 102, 116 and 143 and in their amended complaint in the Delaware Case they also mention the entity by name in paragraphs 29, 114, 116 through 118, 121 through 124, 128, 131, 136, 142, 152, 166 and 197; those allegations as stated are inaccurate and untrue.

82.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraphs 65 and 90 and in their amended complaint in the Delaware Case they also mention the entity by name in paragraphs 114 and 139; those allegations as stated are inaccurate and untrue.

83.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraphs 65, 68, 69 and 72 and in their amended complaint in the Delaware Case they also mention the entity by name in paragraphs 114, 117, 118 and 128; those allegations as stated are inaccurate and untrue.

84.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraphs 65 and 82 and in their amended complaint in the Delaware Case

Case ID: 200501648

they also mention the entity by name in paragraphs 114, 128, 131 and 136; those allegations as stated are inaccurate and untrue.

85.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraphs 65 and 82and in their amended complaint in the Delaware Case they also mention the entity by name in paragraphs 114, 128 and 131; those allegations as stated are inaccurate and untrue.

86.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraph 82 and in their amended complaint in the Delaware Case they also mention the entity by name in paragraph 131; those allegations as stated are inaccurate and untrue.

87.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraph 82 and in their amended complaint in the Delaware Case they also mention the entity by name in paragraph 131; those allegations as stated are inaccurate and untrue.

88.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraph 82 and in their amended complaint in the Delaware Case they also mention the entity by name in paragraph 131; those allegations as stated are inaccurate and untrue.

89.    The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraph 82 and in their amended complaint in the Delaware Case they also mention the entity by name in paragraph 131 those allegations as stated are inaccurate and untrue.

Case ID: 200501648

90.   The original Complaint filed by Defendants in the Delaware Case names an entity by name in or around paragraphs 82, 102 and 164 and in their amended complaint in the Delaware Case they also mention the entity by name in paragraphs 131 and 229; those allegations are completely inaccurate and untrue.

**Specifically, Defendant Hadron Master Fund's principal manager Marco D'Attanasio, worked with the Company to attempt to close on an investment by a large Middle East fund referred to in the Delaware lawsuit.  He and they actually met with that large Middle East fund and know that the allegations in the Delaware lawsuit are inaccurate.   In fact, Mr. D'Attanasio was going to set up a Hadron 2 fund to co-invest with the Middle East fund in a tax efficient manner.  Defendant Alistair Crawford actually met with Defendant Hadron in order to help raise money to close investments by the Middle East fund that he alleges in the Delaware Case. The Middle East fund has spent many hours with the Company and had its TV technology in their lobby, demonstrating the technology to all visitors to their company.**

91.   That fund actually visited the Company's chairman of the board in New York City and openly expressed their desire to invest in the Company.

92.   As stated, Mr. D'Attanasio was going to set up a Hadron 2 to co-invest with the Middle East fund in a tax efficient manner.

93.   The principal manager of Defendant Hadron represented to the Company they would invest approximately USD $1million to $2 million to help close the investment of the Middle East company and come up with approximately USD $12 million thereafter.

94.   Defendant Hadron represented to the Company they were large in investment fund size in an effort to help close investment from the Middle East fund.

95.   Defendant Hadron along with other Defendants knew specifically the allegations concerning the Middle East fund were untrue and improper.

96.   The Company, by and through its management, immediately informed its largest investors, including Defendant Alastair Crawford, that Defendant Hadron was not who they represented themselves to be to the Company.

Case ID: 200501648

97.     The Company explained that some of Defendant Hadron's investments had blown up as was told to it.

98.     After being informed by management of the Company about the problems, Defendant Alastair Crawford, the leader of the takeover investment group, and his friend Tim Childs met with Defendant Hadron and planned to assist Defendant Hadron with raising money.

99.     Marco D'Attanasio, the managing director of Hadron, offered to put his personal money into the Company to help solve those problems.

100.    Therefore, all of those Defendants, specifically Alistair Crawford, knew of the falsity of those allegations relating to the middle east fund.

**The Company's fund raising dramatically fell in Q1 of 2020 by nearly 75% from the same quarter of 2019.  The Company asserts that much of its operations and efforts with prospective investors have been stopped or delayed.  The Company believes all of those actions were negatively and severely impacted by numerous actions by Defendants.**

101.    As stated, the Company raised over USD $4million in Q1 of 2019 but only raised over USD $1million in Q1 of 2020, which shortfall the Company attributes to the numerous actions of several of the Defendants contributing materially to slowing or stopping the Company's fundraising efforts.

102.    Actions by several of the Defendants materially disrupted the operations of the Company causing it harm.

103.    Actions by several of the Defendants interfered with contract obligations of employees and consultants and also for the economic opportunities the Company had with prospective investors and business partners.

104.    Defendants actions were focused solely on what they wanted to accomplish through their actions regardless of the impropriety of their actions, causing harm to the Company and the

Case ID: 200501648

Plaintiffs; many Defendants just simply did not care about the impact on the Company as they were only targeting the Company's management (including Plaintiffs) and consultants.

105.  As stated, the Company has been harmed by the Defendants' actions as Defendants rationalized their actions as limited only to the Company's management (including Plaintiffs) and consultants.

## COUNT I

(Tortuous Interference against Alastair Crawford)

106.  All of the above averments are incorporated herein by references.

107.  The Company had contractual obligations with the Plaintiffs in connection with their obligations as officers and directors of the Company.

108.  The Company had numerous opportunities for prospective contracts and participation from prospective investors and business partners that the Defendant's actions delayed and may have eliminated.

109.  Defendants worked with employees and improperly obtained information as to what was happening with the Company in terms of fundraising and financial information.

110.  Defendants made numerous falsities about investors' interests in the Company, falsification of investment term sheets from investors and other similar falsities and communicated them to employees, shareholders, and the public at large.

111.  Defendants did not bother to try to find the truth or falsity of such false assertions before they were communicated as stated.

Case ID: 200501648

112.  Defendant Alastair Crawford's actions were quite calculated and purposeful and designed to harm the Plaintiffs in connection with the Company's existing and prospective contracts and opportunities.

113.  Defendant Alistair Crawford was not privileged in his actions and he had no legal justification for his behavior.

**WHEREFORE**, the Plaintiffs respectfully seek the Court to find on their behalf and award compensatory damages, punitive damages and any other relief deemed appropriate.

## COUNT II

(Defamation against Alastair Crawford)

114.  All of the above averments are incorporated herein by references.

115.  Defendants' statements to many of the investors and as alleged by Defendant in Delaware Case are false.

116.  Defendant Alastair Crawford intended the Company to change its management and remove Defendants from their positions if he did not get his business desires accomplished, and in the process defamed the Defendants.

117.  He knew or should have known that the filing of the Delaware Case and its publication thereafter would result in financial loss and the loss of personal and professional reputation to the Plaintiffs.

118.  Defendant Alistair Crawford acted with malice through his actions.

119.  The Plaintiffs have suffered financial loss and other damages as a result of Defendant Alastair Crawford's actions.

Case ID: 200501648

**WHEREFORE**, the Plaintiffs respectfully seek the Court to find on their behalf and award compensatory damages, punitive damages and any other relief deemed appropriate.

## COUNT III

(Fraud against Alastair Crawford)

120.  All of the above averments are incorporated herein by references.

121.  Defendant Alastair Crawford committed numerous oral and written statements that were quite misleading and rose to the level of material factual misrepresentation.

122.  Defendant Alastair Crawford knew his representations were false, but he made them anyway to accomplish his desired purposes.

123.  Defendant Alastair Crawford tried to convince numerous parties to rely on his false representations in order to accomplish Defendant Alastair Crawford's desired purposes.

124.  The Plaintiffs have suffered substantial harm as a result of those falsities and the reliance by many others on Defendant Alastair Crawford's false representations.

**WHEREFORE**, the Plaintiffs respectfully seek the Court to find on their behalf and award compensatory damages, punitive damages and any other relief deemed appropriate.

## COUNT IV

(Abuse of Process against Alastair Crawford)

125.  All of the above averments are incorporated herein by references.

Case ID: 200501648

126.  Defendant Alastair Crawford has taken many actions that are completely false in the Delaware Case.

127.  He joined in the lawsuit in the Delaware Case the elderly parents of the Plaintiffs, who are only consultants, to gain leverage in getting his desired results.

128.  Defendant Alastair Crawford directed numerous actions that are improper in the Delaware Case and abused the legal system in the process.

129.  Defendant Alastair Crawford was not justified by many of his actions as the only desire was to accomplish his improper purposes.

**WHEREFORE**, the Plaintiffs respectfully seek the Court to find on their behalf and award compensatory damages, punitive damages and any other relief deemed appropriate.


## COUNT V

(Fraud against All Defendants)

130.  All of the above averments are incorporated herein by references.

131.  Defendant Alastair Crawford knew many of his allegations in his lawsuit and communications with employees and investors were completely wrong in a manner of which they rise to a level of fraud because he made those communications anyway and without validating the truthfulness of his assertions.

132.  The remaining defendants knew or should have known the variety of actions the Defendant Alastair Crawford enacted were done so recklessly, and some actually had malice that rose to the level of fraud.

133.  Defendants had no legal justification for a variety of their actions.

Case ID: 200501648

134.  The Plaintiffs has suffered tremendous harm and damages as a result of Defendants' actions.

**WHEREFORE**, the Plaintiffs respectfully seek the Court to find on their behalf and award compensatory damages, punitive damages, hold Defendants jointly and severally liable and any other relief deemed appropriate.

## COUNT VI

### (Abuse of Process against All Defendants)

135.  All of the above averments are incorporated herein by references.

136.  Defendant Alastair Crawford has taken many actions that are completely false and reckless in the Delaware Case and Defendants joined Defendant Alastair Crawford to utilize the lawsuit and many actions in the lawsuit to accomplish their objectives.

137.  Many of the Defendants should have known that Defendant Alastair Crawford was joining in the lawsuit in the Delaware Case the elderly parents of the Plaintiffs, who are only consultants, to gain leverage in getting his desired results.

138.  Defendants were not justified by many of Defendant Alastair Crawford's actions as the single desire was to accomplish his improper purposes.

**WHEREFORE**, the Plaintiffs respectfully seek the Court to find on their behalf and award compensatory damages, punitive damages, hold Defendants jointly and severally liable and any other relief deemed appropriate.

## COUNT VII

### (Defamation against All Defendants)

139.  All of the above averments are incorporated herein by references.

Case ID: 200501648

140. At least one or more of the Defendants confirmed orally and/or in writing the purpose of them pursuing the Delaware Case was to harm the Plaintiffs, and by association the Company.

141. The comments by the Defendants even out of court with employees, investors, and prospective investors caused the Plaintiffs harm.

142. Defendants' statements to many of the investors and as alleged by Defendant in Delaware Case are false.

143. As stated, Defendant Alastair Crawford intended the Company to remove the Plaintiffs and suffer financial, personal and professional loss if he did not get his business desires accomplished and the Defendants knew of those actions.

144. Defendants knew or should have known that the filing of the Delaware Case and its publication thereafter would result in financial loss to the Plaintiffs, and by association the Company.

145. Defendants acted with malice through their actions and through the actions of Defendant Alastair Crawford.

146. The Plaintiffs has suffered financial loss and other damages as a result of Defendants' actions.

**WHEREFORE**, the Plaintiffs respectfully seek the Court to find on their behalf and award compensatory damages, punitive damages, hold Defendants jointly and severally liable and any other relief deemed appropriate.

## <u>COUNT VIII</u>

(Civil Conspiracy against All Defendants)

147. All of the above averments are incorporated herein by references.

Case ID: 200501648

148.  As averred, Defendants acted in concert and a common purpose to take over the

Company through improper and unlawful means.

149.  Those Defendants acted affirmatively in those improper efforts.

150.  The Plaintiffs have suffered damages from the Defendants' actions.

151.  Defendants' actions were with intent to injure the Plaintiffs which they knew would also

harm them and the Company in the process but took their improper actions anyway.


**WHEREFORE**, the Plaintiffs respectfully seek the Court to find on their behalf and award

compensatory damages, punitive damages, hold Defendants jointly and severally liable and any

other relief deemed appropriate.


<table>
<tr><td></td><td>2009 Chestnut Street<br>3rd Floor<br>Philadelphia, PA 19103<br>215-391-4200<br>Mattrajan1471@gmail.com</td></tr>
<tr><td>By: <em>Mathu Rajan</em><br>    Mathu Rajan</td><td></td></tr>
<tr><td></td><td>2009 Chestnut Street<br>3rd Floor<br>Philadelphia, PA 19103<br>215-391-4200<br>7raja.rajan7@gmail.com</td></tr>
<tr><td>By: <em>[signature]</em><br>    Raja Rajan</td><td></td></tr>
</table>

Case ID: 200501648

# **VERIFICATION**

I verify that the statements made in this Complaint are true and correct to the best of their knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Name: Mathu Rajan

Case ID: 200501648

# **VERIFICATION**

I verify that the statements made in this Complaint are true and correct to the best of their knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Name: Raja Rajan

## **<u>Exhibit A</u>**
## **(Email from Defendant Crawford's attorney)**

Case ID: 200501648

**From:** Ahmad, Faiz <Faiz.Ahmad@skadden.com>
**Sent:** Tuesday, December 24, 2019 6:49 PM
**To:** Raja Rajan <raja@streamtvnetworks.com>
**Cc:** 'Alastair Crawford' <alastair.crawford@gmail.com>; Colby, Eben P <Eben.Colby@skadden.com>
**Subject:** Stream Omnibus Resolution

Raja,

Attached are agreements to reflect the resolution of the matters that have been discussed among the parties and based on the term sheets exchanged.  We understand SLS has agreed to settle the investor claims on behalf of the Company and agreed to underwrite an additional $1m financing, with an opportunity to invest up to an additional $24m in the Company.  As such, we have used the existing SLS notes to prepare an amended SLS Loan Note that will aggregate these amounts.  We understand that time is of the essence and we are ready to discuss and finalize these agreements as soon as possible.  Please provide confirmation that you agree to proceed with resolution of the outstanding claims on the terms set forth in these documents on or before December 26, 2019.

Kind regards,

**Faiz Ahmad**
**Skadden, Arps, Slate, Meagher & Flom LLP**
One Rodney Square | P.O. Box 636 | Wilmington | DE | 19899
T: +1.302.651.3250 | F: +1.302.434.3045
faiz.ahmad@skadden.com

---------------------------------------------------------------------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

========================================================
=====================

**<u>Exhibit B</u>**
**(Proposed out of court settlement document prepared by Defendant Crawford's Lawyer)**

Case ID: 200501648

ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL
- December 24, 2019

## OMNIBUS AGREEMENT

OMNIBUS AGREEMENT (this "Agreement"), dated as of December __, 2019, by and among Stream TV Networks, Inc., a Delaware corporation (together with its affiliates, the "Company"), Mediatainment, Inc., a Delaware corporation ("Mediatainment"), Akshaya Holding LLC, a Nevada limited liability company ("Akshaya"), SLS Holdings VI, LLC, a Delaware limited liability company ("SLS"), Mathu Rajan, an individual ("MR"), Raja Rajan, an individual ("RR"), Suby Joseph, an individual ("SJ" and together with MR and RR, the "Company Officers"), and certain equity investors of the Company listed on Annex I attached hereto (each an "Investor" and collectively, the "Investors").

WHEREAS, each Investor has previously executed one or more securities purchase agreements with the Company for the purchase of shares of Class A Common Stock (as defined in the Existing Charter), in each case, on the respective dates, in the respective amounts and for the respective consideration set forth on Annex I (such consideration with respect to each Investor, the "Original Investment");

WHEREAS, in order to resolve certain claims related to the Original Investments, the Investors and the Company wish to void and rescind the Original Investments in their entirety and take certain other actions in resolution of such claims; and

WHEREAS, the parties desire to memorialize in this Agreement the terms and conditions of certain other actions to be performed by the parties, and this Agreement shall govern the respective rights and obligations of the parties in connection with such actions.

## ARTICLE I

## THE TRANSACTIONS

1.1    Transactions.  Subject to the terms and conditions set forth herein, and on the basis of and in reliance upon the representations, warranties, covenants and agreements set forth herein, the parties hereto shall take the actions described in this Section 1.1 (each, a "Transaction" and, collectively, the "Transactions"):

(a)    On or before the date hereof, the applicable parties shall take, or have taken, the actions set forth below (or cause such actions to take place):

(i)    The Company and each Investor hereby void and rescind such Investor's Original Investment in all respects, in exchange for a return of the original subscription price thereof, plus all interest accrued thereon at a rate of 24.0% per annum, plus a pro rata portion of the expenses related to the matters giving rise to this Agreement and the negotiation, execution and consummation of the transactions contemplated

Case ID: 200501648

hereby, in each case, as set forth on <u>Annex I</u>, which amounts shall be immediately due and payable from the Company to such Investor.

(ii)     SLS, the Company and each Investor hereby agrees that SLS shall assume, pay, perform and discharge the Company's payment obligations pursuant to Section 1.1(a)(i) above, on behalf of the Company, to each Investor.  In respect of and consideration for SLS assuming, paying, performing and discharging such repayment obligations to the Investors, the Company shall herewith (x) amend the Securities Purchase Agreement dated February 8, 2012 by and between SLS and the Company (the "<u>Purchase Agreement Amendment</u>") in the form attached hereto as <u>Exhibit A</u> in order to permit the amendment of the Company's existing senior secured notes issued to SLS, (y) amend the Company's existing senior secured notes in favor of SLS to increase the amounts due to SLS thereunder by an the aggregate amount set forth on <u>Annex I</u> (the "<u>SLS Loan Note</u>") in the form attached hereto as <u>Exhibit B</u>, and (z) issue to SLS the number of shares of Class B Common Stock of the Company set forth on <u>Annex I</u> (the "<u>Stock Issuance</u>")[1].  If at any time, the Class B Common Stock of the Company is eliminated, redeemed, cancelled, or forfeited, SLS or its assigns shall be entitled to and the Company shall promptly issue to SLS or its assigns newly issued voting shares of the Company with aggregate voting power not less than that of the Class B Common Stock of the Company issued to SLS as of the date hereof with respect to all matters subject to the vote or consent of the stockholders.

(iii)     The Company and the board of directors of the Company (the "<u>Board</u>") shall promptly take all action necessary to approve, adopt, declare advisable and recommend to the stockholders of the Company an amendment and restatement to the Third Amended and Restated Certificate of Incorporation, dated as of December 17, 2018 (the "<u>Existing Charter</u>"), in order to increase the authorized shares of the Company in respect of outstanding equity securities of the Company and take such other actions as may be reasonable or necessary to correct the Company's capital structure.

(iv)     The SLS Loan Note shall include an increase to the applicable interest rates thereof to 24.0% per annum applied retroactively from January 1, 2018.

(v)     Each of the parties hereto shall herewith execute and enter into a stockholders' agreement (the "<u>Stockholders' Agreement</u>") in the form attached hereto as <u>Exhibit C</u> which, among other things, shall

---

[1] <u>NTD</u>:  Intended to provide for the issuance of one share of Class B Common Stock for each 10 shares of Class A Common Stock rescinded.

provide for certain director nomination rights and voting agreement obligations of each of the parties hereto.

(vi)     Each of MR and RR shall execute and enter into an employment contract with the Company (each an "Employment Agreement", and collectively, the "Employment Agreements") in the form attached hereto as Exhibit E.

(b)     In consideration for the Transactions contemplated by Section 1.1(a) above, SLS hereby commits to loan an additional $1,000,000 to the Company as contemplated by the SLS Loan Note, and pursuant to the terms of such note, SLS may, in its sole discretion, lend to the Company up to an additional $24,000,000 (collectively $25,000,000 in aggregate, the "New Money Investment").  With the exception of any bonus expressly provided pursuant to an Employment Agreement between the Company and MR or RR, none of the Company, Mediatainment, Akshaya, MR, RR, SJ or their respective affiliates, or SLS, shall be entitled to receive any placement, brokerage, finder's or similar fee or commission in connection with or upon consummation of the New Money Investment. Notwithstanding the foregoing, an amount necessary to satisfy all outstanding franchise taxes of the Company in the State of Delaware shall be paid by SLS from the New Money Investment directly to the applicable taxing authorities in the State of Delaware upon the execution of this Agreement and SLS shall be permitted to deduct and set-off an additional $39,793.93 from the New Money Investment delivered to the Company in respect of fees and expenses incurred by SLS.

(c)     No later than thirty (30) days following the execution of this Agreement, the Company shall conduct an audit of the business, operations, and books and records of the Company (the "Business Audit"), at the direction of and in consultation with the Investors and their respective advisors.  The Company and its directors, officers, employees, and representatives shall fully cooperate with the Business Audit and the Company shall make its officers, employees, and representatives available to answer questions from and provided documents and information to the Investors and their respective advisors with respect to the Business Audit.  Within thirty (30) days of completion of the Business Audit, the Company shall prepare and deliver a written report to the Board regarding the findings of the Business Audit.  The cost of the Business Audit and preparing any report or other documentation pursuant to this Section 1.1(c) shall be borne by the Company.

1.2     Consent to Transactions.  Subject to the last sentence of this Section 1.2, each of the parties hereto, and their respective directors, officers, employees and representatives, shall take all reasonable action necessary or appropriate in order to effect, or cause to be effected, to the extent within its control, each of the Transactions. In furtherance and without limitation of the foregoing, the Company shall use its reasonable best efforts and shall take all action necessary to solicit and obtain any approvals, consents, or waivers that may be necessary or appropriate in order to effect the transactions contemplated hereby.  Each of MR, RR, Mediatainment, Akshaya, SLS each hereby agree to execute and to vote, and to cause their respective affiliates to execute and

Case ID: 200501648

to vote, all of the shares of capital stock of the Company over which each has voting control in favor of the Amended Charter, Stockholders' Agreement and the other Transactions contemplated hereby.

## ARTICLE II

## REPRESENTATIONS AND WARRANTIES

2.1     <u>Representations and Warranties</u>.  Each party hereto hereby represents and warrants to all of the other parties hereto as follows:

(a)     The execution, delivery and performance by such party of this Agreement and of the other documents contemplated hereby, to the extent a party thereto, has been duly authorized by all necessary action (subject to receipt by the Company of all of the Applicable Approvals).  If such party is not an individual, such party is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization or incorporation.

(b)     Such party has the requisite power, authority, legal right and, if such party is an individual, legal capacity, to execute and deliver this Agreement and each of the other documents contemplated hereby, to the extent a party thereto, and to consummate the transactions contemplated hereby and thereby, as the case may be.

(c)     This Agreement and each of the other documents contemplated hereby, to the extent a party thereto, has been duly executed and delivered by such party and constitutes the legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, subject to (i) the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally and (ii) general equitable principles (whether considered in a proceeding in equity or at law).

(d)     Neither the execution, delivery and performance by such party of this Agreement and the other documents contemplated hereby, to the extent a party thereto, nor the consummation by such party of the transactions contemplated hereby, nor compliance by such party with the terms and provisions hereof, will, directly or indirectly (with or without notice or lapse of time or both), (i) if such party is not an individual, contravene or conflict with, or result in a breach or termination of, or constitute a default under (or with notice or lapse of time or both, result in the breach or termination of or constitute a default under) the organizational documents of such party, (ii) constitute a violation by such party of any existing requirement of law applicable to such party or any of its properties, rights or assets or (iii) require the consent or approval of any person or entity, except, in the case of clauses (ii) and (iii), as would not reasonably be expected to be material to the ability of such party to consummate the transactions contemplated by this Agreement.

2.2     The Investors represent and warrant to the Company that the Investors have not filed any complaints, claims, or actions against the Company or any

4

Case ID: 200501648

Released Party (as defined in <u>Section 3.1</u> below) with any state, federal, or local agency or court.  The Investors covenant and agree that the Investors shall not file any complaints, claims, or actions against the Company or any Company Released Party with respect to a claim released pursuant to <u>Section 3.1</u> below at any time hereafter.

2.3     Each of the Company, the Company Officers, Mediatainment, and Akshaya represent and warrant to the Investors that no such party has filed any complaints, claims, or actions against the Investors or any Investor Released Party (as defined in <u>Section 3.2</u> below) with any state, federal, or local agency or court.  Each of the Company, the Company Officers, Mediatainment and Akshaya covenant and agree that no such party shall file any complaints, claims, or actions against the Investors or any Investor Released Party with respect to a claim released pursuant to <u>Section 3.2</u> below at any time hereafter.

2.4     The Company represents and warrants to the Investors that the Board has (a) approved, adopted, declared advisable, and recommended to the stockholders of the Amended Charter and (b) approved and authorized the Company's entry into and performance of the Stockholders' Agreement.

2.5     The Company represents and warrants to the Investors that <u>Schedule 2.5</u> of this Agreement **[COMPANY TO PREPARE SCHEDULE 2.5]** sets forth a true, complete and correct capitalization table of the Company including (a) the number and class of shares of capital stock or other equity interests (including, all warrants, options, convertible securities or other similar interests) that are (i) authorized and (ii) issued and outstanding, (b) the class and number of such equity interests held by each record holder thereof, and (c) the identity of each record holder thereof.  Except as set forth in <u>Schedule 2.5</u>, there are not issued, reserved for issuance or outstanding, and there are not any outstanding obligations of the Company to issue, deliver or sell, or cause to be issued, delivered or sold, (x) any capital stock or any securities of the Company convertible into or exchangeable or exercisable for shares of capital stock or voting securities of, or other equity interests in, the Company, (y) any warrants, calls, options, phantom stock, stock appreciation rights or other rights to acquire from the Company, or any other obligation of the Company to issue, deliver or sell, or cause to be issued, delivered or sold, any capital stock or voting securities of, or other equity interests in, the Company or (z) any rights issued by, or other obligations of, the Company that are linked in any way to the price of any class of Company capital stock, the value of the Company or any part of the Company or any dividends or other distributions declared or paid on any shares of capital stock of the Company.

2.6     The Company, Akshaya, Mediatainment, MR, RR and SJ each hereby represents and warrants to the Investors and SLS that true, complete and correct copies of all contracts material to the business of the Company, its assets, liabilities, operations or prospects, including all amendments, modifications, and supplements thereto have been made available to the Investors and SLS and are listed on <u>Schedule 2.6</u> hereto. **[COMPANY TO PREPARE SCHEDULE 2.6]** Each such material contract is valid, binding, enforceable and in full force and effect in all material respects in

Case ID: 200501648

accordance with its terms with respect to the Company, and to the knowledge of the Company, each other party to such material contracts.

## ARTICLE III

## RELEASE OF CLAIMS

3.1     Investors Release of Claims. In consideration for the promises and obligations set forth in this Agreement, the Investors hereby irrevocably, unconditionally, and fully release the Company, the Company Officers, Mediatainment and Akshaya and any of their respective subsidiaries, and its/their investors, shareholders, officers, directors and employees, and its/their successors and assigns ("Released Parties"), from any and all, actual or potential, charges, complaints, claims, counterclaims, duties, actions, causes of action in law or in equity, suits, liens, liabilities, debts due, sums of money, demands, obligations, accountings, damages, punitive damages, losses, costs or expenses, attorneys' fees or any nature whatsoever and liabilities of any kind or nature whatsoever, known or unknown, suspected or unsuspected, whether arising under state, federal or other law, or based on common law, statutory law, regulations or otherwise (hereinafter referred to as "claim" or "claims"), that the Investors at any time had or claimed to have or that the Investors may have or claim to have for any omissions, acts, facts or damages regarding any matter related to the Original Investment. Notwithstanding the foregoing, the Investors do not release or waive (a) any rights that the Investors may have pursuant to this Agreement or the other agreements contemplated hereby or the respective transactions contemplated hereby and thereby, (b) any rights or claim against any Released Party arising prior to this Agreement not related to the Original Investment, (c) any rights that cannot be released as a matter of law, (d) any right or claim that arises against any Released Party after the date of this Agreement, or (e) any claim against any Released Party arising from fraud, void or voidable acts under the laws of the State of Delaware, the criminal activity or criminal conduct of any Released Party of, or the entry of a pleading of guilty or nolo contendere by any Released Party, in a court or administrative agency or tribunal of competent jurisdiction to, a felony or comparable charge.

3.2     Releasing Parties Release of Claims. In consideration for the Investors' release and waiver of claims herein and other good and valuable consideration, the Company, the Company Officers, Mediatainment and Akshaya (the "Releasing Parties"), on behalf of themselves and the Released Parties, hereby irrevocably, unconditionally and fully release the Investors and each of their respective heirs, family, and affiliates, and all trusts established by the Investors and the trustees thereof, whether or not such individuals are acting as trustees as of the date hereof, and each of their respective agents, trustees, trust beneficiaries, employees, officers, directors, attorneys, executors, successors, assigns and administrators (the "Investor Released Parties"), from any and all, actual or potential, charges, complaints, claims, counterclaims, actions, causes of action in law or in equity, suits, liens, liabilities, debts due, sums of money, demands, obligations, accountings, damages, punitive damages, losses, costs or expenses, attorneys' fees of any nature whatsoever and liabilities of any kind or nature whatsoever, known or unknown, suspected or unsuspected, whether arising under state, federal or

6

Case ID: 200501648

other law, or based on common law, statutory law, regulations or otherwise (hereinafter referred to as "claim" or "claims"), that the Releasing Parties or any Released Party at any time had or claimed to have or that the Releasing Parties or any Released Party may have or claim to have regarding any matter from the beginning of time up to and including the date of this Agreement and any matter related to the Original Investment. Notwithstanding the foregoing, the Releasing Parties and the Released Parties do not release or waive (a) any right or claim that arises against the Investors after the date of this Agreement, (b) any rights that cannot be released as a matter of law; or (c) any claim against the Investors arising from the fraud, void or voidable acts under the laws of the State of Delaware, criminal activity or criminal conduct of any Investor of, or the entry of a pleading of guilty or nolo contendere by any Investor, in a court or administrative agency or tribunal of competent jurisdiction to, a felony or comparable charge.

    3.3    <u>No Admission of Liability</u>.

    (a)    <u>*No Admission of Liability by the Releasing Parties or any Released Party*</u>. This Agreement and compliance with this Agreement shall not be construed as an admission by the Releasing Parties or any Released Party of any liability whatsoever, or as an admission by the Releasing Parties or any Released Party of any violations of the rights of the Investors or any person or violation of any order, law, statute, duty, or contract whatsoever against the Investor or any person.

    (b)    <u>*No Admission of Liability by the Investors*</u>. This Agreement and compliance with this Agreement shall not be construed as an admission by the Investors or any Investor Released Party of any liability whatsoever, or as an admission by the Investors or any Investor Released Party of any violations of the rights of the Releasing Parties or any person or violation of any order, law, statute, duty, or contract whatsoever against the Releasing Parties or any person.

    3.4    <u>Communication with Government Agency</u>. Nothing in this Agreement in any way interferes with an Investor's or the Company's right and responsibility to give truthful testimony under oath. The releases set forth in this Article III are effective except to the extent prohibited by law.

**ARTICLE IV**

**MISCELLANEOUS**

    4.1    <u>Amendments and Waivers</u>. This Agreement may be modified, amended or waived only with the written approval of each of the parties hereto. The failure of any party to enforce any of the provisions of this Agreement shall in no way be construed as a waiver of such provisions and shall not affect the right of such party thereafter or any other party hereto to enforce each and every provision of this Agreement in accordance with its terms.

    4.2    <u>Successors and Assigns</u>. This Agreement shall bind and inure to the benefit of and be enforceable by the parties hereto and their respective successors and

Case ID: 200501648

permitted assigns.  No rights or obligations under this Agreement may be assigned by any party hereto without the prior written consent of each other party hereto.

       4.3    <u>Notices</u>.  All notices, requests and other communications to any party hereunder shall be in writing (including electronic mail ("e-mail") transmission, so long as a receipt of such e-mail is requested and not received by automated response or notice is given on the next business day by alternative means permitted by this <u>Section 4.3</u>).  All such notices, requests, and other communications shall be deemed received on the date of receipt by the recipient thereof if received prior to 5:00 p.m. on a business day in the place of receipt.  Otherwise, any such notice, request or communication shall be deemed to have been received on the next succeeding business day in the place of receipt.  All such notices, requests and other communications to any party hereunder shall be given to such party as follows:

       If to the Company and the Company Officers:

       [●]

       with a copy (which shall not constitute notice) to:

       [●]

       If to the Investors:

       [●]

       with a copy (which shall not constitute notice) to:

       [●]

       If to Mediatainment:

       [●]

       with a copy (which shall not constitute notice) to:

       [●]

       If to Akshaya:

       [●]

       with a copy (which shall not constitute notice) to:

862734.01F-WILSR01A - MSW

Case ID: 200501648

[●]

If to SLS:

[●]

with a copy (which shall not constitute notice) to:

[●]

4.4    <u>Entire Agreement</u>.  Except as otherwise expressly set forth herein, this Agreement, together with the other documents contemplated hereby, embodies the complete agreement and understanding among the parties hereto with respect to the subject matter hereof and supersedes and preempts any prior understandings, agreements, or representations by or among the parties, written or oral, that may have related to the subject matter hereof in any way. Each party acknowledges that it is not entering into this Agreement on the basis of or in reliance upon any promise, representation, or warranty other than as explicitly contained in this Agreement.  This Agreement shall be valid, binding and enforceable among the parties that have executed this Agreement as between such parties, notwithstanding the failure of any other person expected to be a party to this Agreement to so execute.

4.5    <u>No Third Party Beneficiary</u>.  Nothing in this Agreement shall confer any rights, remedies or claims upon any creditors of a party hereto or any other natural person, corporation, company, partnership, association, limited liability company, limited partnership, limited liability partnership, joint venture, business enterprise, trust, or other legal entity not a party or a permitted assignee of a party to this Agreement.

4.6    <u>Governing Law; Jurisdiction; Enforceability</u>.  This Agreement shall be governed in all respects by the laws of the State of Delaware, without regard to the conflicts of law rules of such State that would result in the application of the laws of any other State.  Each party hereby agrees and consents to be subject to the exclusive jurisdiction of the Court of Chancery of the State of Delaware or, if the Court of Chancery lacks subject matter jurisdiction, any court of the State of Delaware situated in New Castle County or the United States District Court for the District of Delaware in any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby.  Each of the parties irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of or in connection with this Agreement in the Court of Chancery of the State of Delaware or, if the Court of Chancery lacks subject matter jurisdiction, any court of the State of Delaware situated in New Castle County or the United States District Court for the District of Delaware and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit, or proceeding brought in any such court has been brought in an inconvenient forum, and agrees not to raise any other objection to venue in

9

Case ID: 200501648

any such court.  It is agreed and understood that monetary damages would not adequately compensate an injured party for the breach of this Agreement, that this Agreement shall be specifically enforceable, and that any breach or threatened breach of this Agreement shall be the proper subject of a temporary or permanent injunction or restraining order. Further, each party hereto waives any claim or defense that there is an adequate remedy at law for such breach or threatened breach.

   4.7 <u>WAIVER OF JURY TRIAL</u>.  FOR THE AVOIDANCE OF DOUBT, EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

   4.8 <u>Counterparts; Facsimile Signatures</u>.  This Agreement may be executed in any number of counterparts , each of which shall be an original, but all of which together shall constitute one instrument.  This Agreement may be executed by facsimile, e-mail or .pdf format signature(s).

   4.9 <u>Other Definitional and Interpretative Provisions</u>.  The words "hereof", "herein" and "hereunder" and words of like import used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement. The captions herein are included for convenience of reference only and shall be ignored in the construction or interpretation hereof.  References to Sections and Exhibits are to Sections and Exhibits of this Agreement unless otherwise specified.  All Exhibits annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein.  Any capitalized terms used in any Exhibit but not otherwise defined therein shall have the meaning as defined in this Agreement.  Any singular term in this Agreement shall be deemed to include the plural, and any plural term the singular.  Whenever the words "include", "includes", or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation", whether or not they are in fact followed by those words or words of like import.  "Writing", "written", and comparable terms refer to printing, typing, and other means of reproducing words (including electronic media) in a visible form. References to any statute shall be deemed to refer to such statute as amended from time to time and to any rules or regulations promulgated thereunder.  References to any agreement or contract are to that agreement or contract as amended, modified, or supplemented from time to time in accordance with the terms hereof and thereof. References to any person or entity include the successors and permitted assigns of that person or entity.  References from or through any date mean, unless otherwise specified, from and including or through and including, respectively.  This Agreement is being entered into between sophisticated parties, each of which or whom has reviewed the Agreement, had the opportunity to discuss it with its, his or her counsel, and is fully knowledgeable about its terms and conditions. The parties therefore agree that this Agreement shall be construed without regard to the authorship of the language and without any presumption or rule of construction in favor of any of them.

Case ID: 200501648

4.11    Expenses.  Each party shall bear its own expenses in connection with the transactions contemplated by this Agreement, including costs of their respective attorneys, accountants, investment bankers, brokers, and other representatives.

4.12    Non-Disparagement.  In consideration of the transactions contemplated hereunder, each party hereto agrees that, as long as the other parties comply with each of their respective obligations under this Agreement, such party shall not, directly or indirectly, (i) make any public statement concerning the circumstances resulting in the execution of this Agreement or (ii) make comments which are intended to disparage any other party hereto.

4.13    Confidentiality.  All information contained herein or related to the contents of this Agreement, including the terms and existence of this Agreement, is confidential, and shall not be disclosed to anyone including to any stockholder or investor of the Company not a party hereto, other than the parties hereto and their legal or financial advisors who (a) need to know the information to evaluate the Transactions or perform their respective obligations hereunder and (b) are bound to keep such information confidential, unless disclosure is expressly required in order to comply with, law, regulatory authority or judicial, legal or regulatory process, or in order to enforce a party's rights hereunder, in which case the other parties shall be notified in advance to the extent practicable and permitted by law.

[Signature Page to Follow.]

IN WITNESS WHEREOF, the parties hereto have executed this Omnibus Agreement as of the date first above written.

**STREAM TV NETWORKS, INC.**

By: _____
    Name:
    Title:

**MEDIATAINMENT, INC.**

By: _____
    Name:
    Title:

**AKSHAYA HOLDING LLC**

By: _____
    Name:
    Title:

**SLS HOLDINGS VI, LLC**

By: _____
    Name:
    Title:

Case ID: 200501648

**MATHU RAJAN**

_____


**RAJA RAJAN**

_____


**SUBY JOSEPH**

_____

862734.01F-WILSR01A - MSW

Case ID: 200501648

**[INVESTOR]**

_____

**[INVESTOR]**

_____

**[INVESTOR]**

_____

[Signature Page to the Omnibus Agreement]

Case ID: 200501648

**ANNEX I**

**<u>INVESTORS</u>**

| Investor | Date of Investment | Shares of Class A Common Stock Voided | Original Investment | Accrued Interest | Shares of Class B Common Stock |
|----------|---------------------|----------------------------------------|---------------------|-------------------|--------------------------------|
|          |                     |                                        |                     |                   |                                |
|          |                     |                                        |                     |                   |                                |
|          |                     |                                        |                     |                   |                                |

862734.01F-WILSR01A - MSW

Case ID: 200501648

**EXHIBIT A**

**<u>PURCHASE AGREEMENT AMENDMENT</u>**

See attached.

Case ID: 200501648

**EXHIBIT B**

**<u>SLS LOAN NOTE</u>**

[See attached.]

Case ID: 200501648

**EXHIBIT C**

**<u>STOCKHOLDERS' AGREEMENT</u>**

See attached.

[Exhibit C]

**EXHIBIT D**

**EMPLOYMENT AGREEMENTS**

See attached.

862734.01F-WILSR01A - MSW

Case ID: 200501648

**SCHEDULE 2.5**

**<u>CAPITALIZATION</u>**

[Capitalization table to be provided]

862734.01F-WILSR01A - MSW

Case ID: 200501648

**<u>Exhibit C</u>**
**(The Cease and Desist letter sent to Alastair Crawford)**

Case ID: 200501648



**DLA Piper LLP (US)**
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, Pennsylvania  19103-7300
www.dlapiper.com

Nancy Shane Rappaport
nancy.rappaport@dlapiper.com
**T**  215.656.3357
**F**  215.606.3357

October 16, 2018

*Via Electronic Mail*

Mr. Alastair Crawford
*alastair.crawford@gmail.com*

Dear Mr. Crawford:

DLA Piper LLP (US) represents Stream TV Networks, Inc. ("Stream TV") and its subsidiaries. It has come to our attention that you made an unauthorized visit to one of Stream TV's subsidiaries last week, and that you intend to do so again.

Stream TV takes your actions very seriously. Unauthorized visits (whether to Stream TV or its subsidiaries) unnecessarily cause confusion and disrupt workflow of the Company's employees.

Please immediately cease and desist all such activities. If you continue to contact Stream TV's employees, business partners (including but not limited to subsidiaries), or actual and/or prospective vendors without authorization from Stream TV's senior management, Stream TV may take legal action against you. Such action may include claims for injunctive and equitable relief, and money damages.

Please also confirm your receipt and understanding of this cease and desist letter within 24 hours of receipt. Should you fail to do so, Stream TV will deem your silence to indicate your intent to continue interfering with its business, and it will take all necessary legal action to prevent the same.

Please contact me if you have any questions or would like to discuss this matter further.

Very truly yours,

Nancy Shane Rappaport, Esq.