**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MATHU RAJAN** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **ALASTAIR CRAWFORD, PATRICK** | : | |
| **MILES, KEVIN GOLLOP, KRISTOFF** | : | |
| **KABACINSKI, ASAF GOLA and** | : | |
| **SHADRON STASTNEY** | : | **NO. 21-1456** |

## <u>MEMORANDUM OPINION</u>

Savage, J.                                                        February 16, 2022

As expressed in the preamble of the First Amended Complaint, the centerpiece of this lawsuit is the takeover of Stream TV Networks, Inc., a company controlled by plaintiff Mathu Rajan's family and of which he was the Chief Executive Officer and a member of the Board of Directors.[1]  Mathu spends 174 of 204 paragraphs describing the means and methods of the takeover that form the bases of his claims.  He essentially claims that the takeover was invalid even though another court has declared it valid.

Mathu has sued defendants Alastair Crawford, Patrick Miles, Shadron Stastney, Kevin Gollop, Kristoff Kabacinski, and Asaf Gola for their involvement in the takeover.  He asserts causes of action for tortious interference with contractual relations and civil conspiracy against all defendants, defamation against Crawford and Gollop, and abuse of process against Crawford and Miles.

---

[1] Mathu and his brother Raja commenced this action in state court.  After it was removed to this court, Mathu filed an amended complaint that dropped Raja as a plaintiff, presumably because Raja had filed his own action in state court that was also removed.  Raja's case was remanded to the state court for lack of diversity jurisdiction.  Order & Mem. Op., *Rajan v. Crawford*, No. 2:21-cv-01150 (E.D. Pa. Feb. 2, 2022), ECF Nos. 53–54.  To avoid confusion, we refer to the brothers by their given names.

Moving to dismiss the amended complaint, defendants Crawford, Miles, and Stastney argue that Mathu's tortious interference and civil conspiracy claims fail because he is collaterally estopped from relitigating the validity of the Omnibus Agreement that implemented the takeover. Crawford and Miles argue that Mathu cannot state a claim for abuse of process. Crawford asserts that Mathu cannot state a claim for defamation.

We conclude that Mathu is precluded from relitigating the legality of the takeover and the validity of the agreement implementing it. Because his tortious interference with contract and civil conspiracy causes of action emanate from his claim that the takeover and the agreement were invalid and the Chancery Court of Delaware has declared them valid, we shall dismiss those counts. Mathu also failed to state causes of action for abuse of process and defamation.

## Background

Stream TV Networks, Inc. ("Stream") was founded by the Rajan brothers in 2009 to create and commercialize a technology that would enable viewers to watch three-dimensional ("3-D") media without 3-D glasses.[2]  Mathu Rajan was the Chief Executive Officer and President of Stream.[3]  His brother, Raja Rajan, was the Chief Operating Officer and General Counsel.[4]  The brothers were majority shareholders and members of Stream's Board of Directors.[5]

---

[2] Confidential Private Placement Memorandum at 1 (attached as Ex. F to Am. Compl., ECF No. 8) ["PPM"]; *Stream TV Networks, Inc. v. SeeCubic, Inc.*, 250 A.3d 1016, 1022 (Del. Ch. 2020).

[3] Am. Compl. ¶ 14; *Stream*, 250 A.3d at 1023.

[4] *Stream*, 250 A.3d at 1023.

[5] *Id.* at 1022.

When creditors threatened to foreclose on loans and investors demanded changes in Stream's management, the Rajan brothers ignored them.[6]  With the company on the brink of collapse, conflicts among the Rajan brothers and investors spawned litigation.[7]  This lawsuit is one of three actions brought over control of Stream.   The other two lawsuits, *Crawford v. Rajan*, No. 2020-0004 (Del. Ch. filed Jan. 3, 2020) ("Crawford lawsuit") and *Stream TV Networks, Inc. v. SeeCubic, Inc.*, No. 2020-0766 (Del. Ch. filed Sept. 8, 2020) ("Stream lawsuit"), are implicated in this action.  The Crawford lawsuit was filed by Crawford and a group of investors and creditors against the Rajans for, among other things, investment fraud, corporate improprieties, and breach of fiduciary duties.  The Stream lawsuit, brought by the Rajan brothers in the name of the company, challenged the takeover.

A more detailed portrayal of the takeover, the Rajan family's control of Stream, the roles of the defendants in the takeover, and the events leading up to the takeover appears in the Chancery Court's opinion in the Stream lawsuit, which we discuss later in the context of the preclusive effect of that court's judgment.[8]

---

[6] *Id.* at 1020, 1023–24.

[7] *Id.* at 1023–24.  *See also Stream TV Networks, Inc. v. SeeCubic, Inc.*, No. 360-2021 (Del. Nov. 11, 2021); *In re: Stream TV Networks, Inc.*, No. 21-899 (D. Del. June 23, 2021); *In re: Stream TV Networks, Inc.*, No. 21-889 (D. Del. June 22, 2021); *In re: Stream TV Networks, Inc.*, No. 21-10848 (Bankr. D. Del. May 23, 2021); *In re: Stream TV Networks, Inc.*, No. 21-723 (D. Del. May 21, 2021); *In re: Stream TV Networks, Inc.*, No. 21-10433 (Bankr. D. Del. Feb. 24, 2021); *Stream TV Networks, Inc. v. SeeCubic, Inc.*, No. 2020-0766 (Del. Ch. Sept. 8, 2020); *SLS Holdings VI, LLC v. Stream TV Networks, Inc.*, No. N20C-03-225 (Del. Super. Ct. Mar. 23, 2020); *Crawford v. Rajan*, No. 2020-0004 (Del. Ch. Jan. 3, 2020); *Bernard Spain Family P'ship, LP v. Rajan*, No. 2018-0786 (Del. Ch. Oct. 31, 2018).  This list does not include the numerous breach of contract actions filed against Stream by third parties.

[8] *See infra* at 8–14.

*Mathu's Amended Complaint*

In his rambling and often confusing amended complaint, Mathu announces that he is attacking the validity of the takeover.  The facts alleged in the amended complaint, which we accept as true and draw all reasonable inferences from them in favor of Mathu, are as follows.

Mathu claims that Crawford, a Stream shareholder and investment broker, spearheaded a corporate takeover of Stream.[9]  Crawford aimed to oust Mathu from Stream, restructure Stream's management, and transfer Stream's assets to a new company.[10]  Crawford enlisted a group of Stream shareholders, investors, and corporate insiders to carry out the takeover.[11]  The group was comprised of defendants Miles, Shadron Stastney, Kevin Gollop, Asaf Gola, and Kristoff Kabacinski.[12]

The amended complaint describes how the defendants, led by Crawford, crafted a scheme to oust Mathu and takeover Stream.  In the first quarter of 2020, Gola, Gollop, and Kabacinski were appointed as advisors with the expectation that they would be appointed to the Board.[13]  Unbeknownst to Mathu and Stream, they were already part of Crawford's takeover scheme.[14]

In early May 2020, Gola, Gollop, and Kabacinski appointed Gola and Gollop to a "Resolution Committee" to propose a resolution of disputes raised in the Crawford

---

[9] Am. Compl., Preamble, ¶¶ 8, 15–16, 39.

[10] *Id.*, Preamble, ¶¶ 2, 27, 97, 105–06, 118, 125, 134, 141–42, 151, 153, 159, 163, 190.

[11] *Id.* ¶¶ 8, 15–21, 110, 119, 128–30.

[12] *Id.*, Preamble, ¶¶ 110, 129–30.

[13] *Id.* ¶¶ 128–29.

[14] *Id.* ¶ 130

lawsuit.[15]  On May 7, 2020, the Resolution Committee executed the Omnibus Agreement on Stream's behalf.[16]  Mathu had no input in drafting it.[17]  Pursuant to the Omnibus Agreement, Stream's assets were transferred to a new company, SeeCubic.[18]  Mathu received no shares, equity, or control of SeeCubic.[19]  He was not an officer or director of the new company.[20]

Mathu then filed this action.  His four causes of action all arise, directly or indirectly, out of the takeover.  In the first count, Mathu asserts a tortious interference cause of action.  He complains that the defendants improperly obtained and used Stream corporate information to support the take-over, falsified documents, and made false statements to employees, shareholders, and the public regarding the use of investors' money.  This conduct, he alleges, interfered with his equity rights, his employment contract, and his "contractual obligations" as an officer and director of Stream.  Mathu also contends that the defendants interfered with Stream's prospective contractual relationships.

In the second count, Mathu asserts a cause of action for defamation against Crawford and Gollop.  He alleges that they accused him of dishonesty to facilitate the takeover and to remove him from management.

---

[15] *Id.* ¶ 148

[16] *Id.* ¶ 149.

[17] *Id.* ¶ 161.

[18] *Id.* ¶ 153.

[19] *Id.* ¶ 151.

[20] *Id.* ¶¶ 161, 163, 173; PPM at 18–20.

The third count is for abuse of civil process.   Mathu claims Crawford and Miles engaged in abusive litigation tactics and made false statements in the Crawford lawsuit. Their actions, according to Mathu, were intended to advance the takeover.

The fourth count asserts a civil conspiracy among all defendants "to take over the Company through improper and unlawful means."   Liberally reading the amended complaint, it appears that the means were defaming Mathu, filing and amending the Crawford lawsuit, and interfering with Mathu's employment contract and equity in Stream.

### Standard of Review

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

A conclusory recitation of the elements of a cause of action is not sufficient.  *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  The plaintiff must allege facts necessary to make out each element.  *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8).   In other words, the complaint must contain facts which support a conclusion that a cause of action can be established.

In considering a motion to dismiss under Rule 12(b)(6), we first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions.  Then, we determine whether the alleged facts make out a plausible claim for relief.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting

*Iqbal*, 556 U.S. at 679).  All well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor.  *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).

In deciding a motion to dismiss, courts generally consider only the allegations of the complaint, exhibits attached to the complaint, documents incorporated by reference in the complaint, and matters of public record.  *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 134 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420, 1426 (3d Cir. 1997)); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

A court may take judicial notice of prior judicial opinions when deciding a Rule 12(b)(6) motion.  *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).  When a Rule 12(b)(6) motion asserts issue preclusion and the complaint does not mention or attach the prior adjudication, the court may consider the prior adjudication to determine its preclusive effect.

Courts "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Benefit Guar. Corp.*, 998 F.2d at 1196 (citations omitted).  Such documents include those that are "*integral to or explicitly relied* upon in the complaint."  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis in original)).  Because the Omnibus Agreement is integral to Mathu's amended complaint, we may consider the Chancery Court's opinion

regarding its validity without converting the motions to dismiss to motions for summary judgment.

In addition, a *pro se* plaintiff's pleadings must be considered deferentially, affording him the benefit of the doubt where one exists. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)). Nonetheless, to survive dismissal, a *pro se* complaint must allege sufficient facts stating a plausible claim for relief. *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)).

**Analysis**[21]

*Preclusive Effect*

On September 8, 2020, Stream, by the Rajan brothers purportedly acting as officers and directors, sued SeeCubic, Inc. in the Court of Chancery of Delaware. It sought injunctive relief to prevent SeeCubic from enforcing an agreement that transferred Stream's assets to SeeCubic and replaced the Rajan brothers as officers and directors.[22] SeeCubic filed counterclaims and third-party claims against Mathu and Raja.[23] SeeCubic countered with a request for a preliminary injunction to preclude Stream from interfering with the implementation of the Omnibus Agreement.[24]

---

[21] Mathu filed this lawsuit in Pennsylvania. Although a significant portion of the conduct appears to have occurred in Delaware, the parties agree that Pennsylvania law applies.

[22] Stream Lawsuit Compl. ¶ 3. Stream requested the Chancery Court to grant immediate permanent injunctive relief to restrain and enjoin SeeCubic from asserting ownership rights in Stream's assets pursuant to the Omnibus Agreement or any other basis; asserting that it is "formerly Stream TV"; manufacturing or distributing any product using Stream's 3-D viewing technology; representing Stream's 3-D viewing technology for the purpose of securing customers; interfering with Mathu's discharge of his responsibilities as director and CEO of Stream; interfering with Stream's existing and prospective business relations; and contacting Stream's employees, consultants, vendors stockholders, investors, and customers. *Id.*, Prayer for Relief ¶¶ (a)(i)–(vii).

[23] *Stream TV Networks*, 250 A.3d at 1020, 1027.

[24] *Id.*

The Stream lawsuit was Mathu's first attempt to challenge the legality of the takeover. It failed. The Chancery Court determined that the takeover was legitimate, holding that the agreement that effectuated the takeover was valid. In doing so, it rejected Mathu's arguments. In short, the Chancery Court placed its imprimatur on the takeover.

The Chancery Court opinion tells the tale of the Rajan brothers, who had created a company to commercialize a developing technology and were about to lose it all.[25] The company they had formed and ran was insolvent and failing when a group of creditors and investors in the company took steps to replace them as officers and to save the company by restructuring debt.[26]

SLS Holdings VI, LLC ("SLS") and Hawk Investment Holdings Limited ("Hawk") held a series of secured notes through which Stream had pledged all of its assets as security.[27] Security agreements authorized either of them to take control of Stream's assets.[28]

In 2019, Crawford, a significant shareholder, tried to negotiate with SLS, Hawk, and the Rajan brothers to restructure Stream.[29] He proposed a new company with a different governance structure to acquire Stream's assets.[30] In December 2019, Crawford provided Stream's secured creditors and the Rajan brothers with a draft of the

---

[25] *Id.* at 1020–22.

[26] *Id.* at 1023–25.

[27] *Id.* at 1023.

[28] *Id.*

[29] *Id.* at 1023–24.

[30] *Id.*

Omnibus Agreement restructuring the company.[31]   The Rajan brothers rejected the proposal, refusing to restructure Stream.[32]

In January 2020, the equity investors filed the Crawford lawsuit against the Rajan brothers in the Chancery Court of Delaware.[33]   Stream's financial troubles worsened through January, February, and March 2020.[34]   During this period, Crawford, SLS, and Hawk unsuccessfully tried to discuss restructuring with Stream and a plan to form a new company to acquire Stream's assets.[35]

Stream's financial troubles led Crawford, SLS, and Hawk to urge the Rajan brothers to appoint outside directors.[36]   In March 2020, the Rajan brothers, by unanimous written consent as Stream's only directors, appointed Kabacinski, Gola, Gollop, and Frank Hodgson as independent directors.[37]   Stream announced the new outside directors to investors and employees.[38]

The outside directors soon discovered Stream's dire financial condition.[39]   They began to negotiate a resolution with SLS, Hawk, and the equity investors.[40]

---

[31] *Id.* at 1024.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

At a May 4, 2020 board meeting, Gola proposed three resolutions.[41]   First, directors could not be removed for at least one year.[42]  Second, a Resolution Committee, made up of Gola and Gollop, would have "the full power and authority of the full Board of Directors to resolve any existing or future debt defaults or claims, and any existing or future litigation, or threats thereof, on behalf of [Stream], without further action being required from the Board of Directors or any executive of the [C]ompany."[43]   Third, Kabacinski would replace Mathu as CEO.[44]  All three resolutions were adopted, the first by unanimous vote, and the second and third by a majority, with the Rajan brothers abstaining.[45]   Hodgson had left the Board meeting without voting.[46]   After further discussion, the Board unanimously approved a resolution proposed by Raja to replace the third resolution.[47]   The new resolution provided that Mathu would remain CEO and Stream would not fundraise without Board authorization.[48]

On May 6, 2020, the Resolution Committee approved the Omnibus Agreement.[49] Stream transferred all assets to SeeCubic, a newly formed entity controlled by SLS and Hawk, and gave SLS and Hawk power of attorney to facilitate the asset transfer.[50]   In exchange, SLS and Hawk released their claims against Stream and refrained from

---

[41] *Id.*

[42] *Id.*

[43] *Id.* at 1025 (alterations in original).

[44] *Id.*

[45] *Id.* at 1024–25.

[46] *Id.* at 1024.

[47] *Id.* at 1025.

[48] *Id.*

[49] *Id.*

[50] *Id.* at 1020, 1025.

foreclosing on Stream's assets.[51]   The Omnibus Agreement also allowed the minority investors to exchange their shares in Stream for shares in SeeCubic and Stream received one million shares of SeeCubic.[52]   The Rajan brothers had no right to exchange their Stream shares for SeeCubic shares.[53]   However, because Stream would receive one million shares of SeeCubic, the Rajans would benefit from their ownership interest in Stream.[54]

The Rajan brothers made several unsuccessful attempts to nullify the Omnibus Agreement by challenging the legitimacy of Gola, Gollop, and Kabacinksi to act as members of the Stream Board.   The Rajans executed a Stockholder Consent that purportedly removed Gola, Gollop, and Kabacinksi from the Board.[55]   Although the Stockholder Consent was executed on May 8, 2020 or May 9, 2020, they backdated it to May 6, 2020 in an attempt to invalidate the Omnibus Agreement.[56]   The Rajan brothers also claimed that the outside directors were not validly appointed because they had never signed a "Director Services Agreement" and they were only advisors who had not been formally appointed to the Board.[57]

Anticipating the Rajan brothers' challenge to the Omnibus Agreement, SLS, Hawk, the equity investors, and the Resolution Committee tried to negotiate a deal.[58]   The

---

[51] *Id.* at 1020–21, 1025.

[52] *Id.* at 1021, 1025.

[53] *Id.* at 1025.

[54] *Id.*

[55] *Id.* at 1026.

[56] *Id.*

[57] *Id.*

[58] *Id.* at 1026–27.

negotiations were in vain because the Rajan brothers refused to comply with the Omnibus Agreement.[59]  On May 11, 2020, the Rajan brothers and Hodgson convened a purported meeting of the Board and adopted a resolution nullifying and voiding the Omnibus Agreement.[60]

The Rajan brothers continued to refuse to comply with the Omnibus Agreement.[61] They tried to change the management of Stream subsidiaries and to remove prototype technology from a storage facility in the Netherlands.[62]  Mathu also incorporated a new entity, purporting to grant it a license to use Stream's technology.[63]

On December 8, 2020, based on these findings, the Chancery Court denied Stream's request for a preliminary injunction and instead issued SeeCubic a preliminary injunction.[64]  The Chancery Court determined that: (1) the Resolution Committee, composed of Gola and Gollop, had the authority to bind Stream to the Omnibus Agreement; (2) the outside directors who approved the Omnibus Agreement were validly appointed; (3) even if they had not been validly appointed, the outside directors had authority as *de facto* directors; (4) the outside directors had not been removed prior to their approving the Omnibus Agreement; and (5) the Resolution Committee members did not breach fiduciary duties by approving the Omnibus Agreement.[65]  It "preliminarily enjoined [Stream, Mathu, and Raja] from taking any action to interfere with the Omnibus

---

[59] *Id.* at 1027.

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.* at 1047.

[65] *Id.* at 1028–33, 1045–46.

Agreement dated May 6, 2020, including, but not limited to . . . [d]isputing the validity of the Omnibus Agreement (except as part of [his] claims and defenses in this litigation)."[66]

On January 26, 2021, SeeCubic filed a motion for summary judgment, seeking a judgment declaring the Omnibus Agreement valid and binding, and a permanent injunction ordering Mathu to comply with the Omnibus Agreement.[67]   On September 23, 2021, the Chancery Court partially granted SeeCubic's summary judgment motion, declared the Omnibus Agreement valid and permanently enjoined Mathu from interfering with the Omnibus Agreement.[68]   It made the partial judgment final on November 10, 2021.[69]

The defendants argue that the tortious interference and conspiracy counts are premised on a challenge to the agreement and the takeover.[70]  They contend that Mathu is precluded from relitigating the validity of the Omnibus Agreement and the takeover.[71]

We agree Mathu is attempting to relitigate issues decided in the Stream lawsuit. Hence, we must determine whether collateral estoppel precludes relitigating those issues in this case.

---

[66] Order Granting Mot. for Prelim. Inj. ¶ 1(a), *Stream TV Networks, Inc. v. SeeCubic, Inc.*, No. 2020-0766 (Del. Ch. Dec. 8, 2020), 2020 WL 7246525, at *1 (attached as Ex. C to Mem. of Law in Supp. of Defs. Alastair Crawford's & Patrick Miles's Mot. to Dismiss the Am. Compl., ECF No. 10-4).

[67] SeeCubic's Opening Br. in Supp. of its Mot. for Summ. J. at 4–5, 38–48, 50, *Stream TV Networks, Inc. v. SeeCubic, Inc.*, No. 2020-0766 (Del. Ch. Jan. 26, 2021), 2021 WL 321819.

[68] Order Granting in Part SeeCubic Inc.'s Mot. for Summ. J. ¶¶ 6–7, 10. ECF No. 29-1.

[69] Order Entering Partial Final J. Under Rule 54(b) ¶¶ 2–3, 5.

[70] Mem. of Law in Supp. of Defs. Alastair Crawford's & Patrick Miles's Mot. to Dismiss the Am. Compl. at 15–18, ECF No. 10-1; Mem. of Law in Supp. of Def. Shadron Stastney's Mot. to Dismiss the Am. Compl. at 8–10, 14–15, ECF No. 18-2.

[71] Mem. of Law in Supp. of Defs. Alastair Crawford's & Patrick Miles's Mot. to Dismiss the Am. Compl. at 15–18; Mem. of Law in Supp. of Def. Shadron Stastney's Mot. to Dismiss the Am. Compl. at 8–10, 14–15.

Pursuant to 28 U.S.C. § 1738, a federal court must give a state court's judgment the same preclusive effect given by that state's courts.  *See Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 373 (1996); *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 141 (3d Cir. 1999).  Therefore, in considering the Chancery Court's findings in the Stream lawsuit regarding the validity of the Omnibus Agreement and the takeover, we give the same preclusive effect the Delaware courts would give to them.

"[W]here a court . . . has decided an issue of fact necessary to its decision, the doctrine of collateral estoppel precludes relitigation of that issue in a subsequent suit or hearing concerning a different claim or cause of action involving a party to the first case." *Betts v. Townsends, Inc.*, 765 A.2d 531, 534 (Del. 2000) (citing *Messick v. Star Enter.*, 655 A.2d 1209, 1211 (Del. 2000)).

For preclusion to apply under Delaware law, four requirements must be satisfied: (1) the issue of fact decided in the prior adjudication is identical to the one presented; (2) there is a final judgment on the merits; (3) the party against whom collateral estoppel is asserted is a party or in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior adjudication. *Betts*, 765 A.2d at 535 (quoting *State v. Machin*, 642 A.2d 1235, 1239 (Del. Super. Ct. 1993)).  The preclusion doctrine applies whether the later action raises the same or a different claim.  *In re Asbestos Litigation (Lee)*, 517 A.2d 288, 292 (Del. Super. Ct. 1986) (citations omitted); *TR Inv'rs, LLC v. Genger*, No. 6697, 2013 WL 603164, at *13 n.119 (Del. Ch. Feb. 18, 2013) (quoting Restatement (Second) of Judgments § 27 (Am. L. Inst. 1982)).

The causes of action in the Stream lawsuit and this case are not identical. However, the facts that were necessary to the decision in the Stream lawsuit are the same as those that are dispositive of Mathu's tortious interference and civil conspiracy claims. The focal point of these causes of action, as it was in the Stream lawsuit, is the validity of the Omnibus Agreement and the takeover. The outcome of the Stream lawsuit depended on the Delaware court's determination of the validity of the takeover. Here, Mathu alleges that the defendants orchestrated an illegal and improper takeover of Stream, utilizing the Omnibus Agreement which he claims is invalid. Purporting to act on behalf of Stream, he raised the same issues in the Chancery Court. That court declared the Omnibus Agreement valid.

The Chancery Court determined that the defendants, as investors and directors of Stream, were acting in the best interests of Stream and its investors. It also found that the defendants' actions were proper and legal. The Chancery Court explicitly found that "[t]he evidence indicates that Gola and Gollop believed the Omnibus Agreement to be in the best interests of Stream and its stockholders (including the Rajan family) because it prevented Stream's creditors from foreclosing on all of its assets and leaving Stream and its stockholders with nothing."[72]

The Chancery Court judgment is final and was based on the merits. When Mathu filed this action, the Chancery Court had already declared the Omnibus Agreement valid and issued a preliminary injunction enjoining him and others from interfering with the Omnibus Agreement. The Chancery Court later made the injunction permanent and entered final partial summary judgment, declaring the Omnibus Agreement valid and

---

[72] *Stream TV Networks*, 250 A.3d at 1046.

binding.  For purposes of preclusion, the permanent injunction is considered final even though it is appealable.  *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 210 (3d Cir. 2001) (quoting *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991)).

There is no question that Mathu was a party to the prior adjudication.  Not only did he purport to act on behalf of Stream, he was a third-party defendant.  Indeed, the injunction permanently enjoined him from interfering with the implementation of the Omnibus Agreement.

Mathu had a full and fair opportunity to litigate the issue in the Stream lawsuit.  He actively participated in the case.  He was represented by counsel throughout the proceedings and conducted substantial discovery.

Applying preclusion realistically and practically, we conclude that Mathu is precluded from relitigating the validity of the Omnibus Agreement resulting in the takeover of Stream.  Because the crux of his tortious interference with contract and civil conspiracy causes of action is the Omnibus Agreement and the resulting takeover, we shall dismiss those counts with prejudice.

### *Abuse of Process*

In his abuse of process count, Mathu claims Crawford and Miles engaged in abusive litigation tactics in the Crawford lawsuit, an action accusing the Rajan brothers of mismanagement and misrepresentations to Stream investors.  Their actions, according to Mathu, were intended as leverage to unjustifiably advance the takeover.[73]  He identifies three abusive acts: (1) filing the Crawford lawsuit in Delaware in violation of the forum

---

[73] Am. Compl. ¶¶ 3, 6–7, 29–31, 50, 196.

selection provision in the investor agreement;[74] (2) amending the complaint to add his elderly parents and "other entities" as defendants;[75] and (3) amending the complaint to remove and/or add the names of nonparty entities.[76]   Mathu also complains that the allegations in the Crawford lawsuit were baseless.

The Crawford lawsuit, which is referred to throughout Mathu's amended complaint, was filed in the Court of Chancery of Delaware on January 3, 2020 by nine investors led by Crawford against the Rajan brothers, Suby Joseph, Mediatainment, Inc. ("Mediatainment"), and Akshaya Holding LLC ("Akshaya"), the holding company controlled by the Rajan family.[77]   An amended complaint added more investors as plaintiffs and the Rajan brothers' parents as defendants.[78]   The gravamen of the amended complaint was that the Rajan brothers and others plotted to gain total control of Stream; immunize themselves from the scrutiny and oversight of other shareholders and Board members; and, to fraudulently induce the Crawford plaintiffs to invest, recruit other investors, and/or retain their equity in Stream through false representations, misleading statements, and material omissions.[79]

---

[74] *Id.* ¶¶ 26, 28–29.

[75] *Id.* ¶¶ 6, 29, 196, 198.

[76] *Id.* ¶¶ 63–83.

[77] Verified Compl. ¶¶ 9–23, *Crawford v. Rajan*, No. 2020-0004 (Del. Ch. Jan. 3, 2020), 2020 WL 118582 (attached as Ex. B to Mem. of Law in Supp. of Defs. Alastair Crawford's & Patrick Miles's Mot. to Dismiss the Am. Compl., ECF No. 10-3).

[78] Am. Verified Compl. ¶¶ 10–19, 21–23, 25–28, 31–42, 44–45, 49–57, 59, 63–64, *Crawford v. Rajan*, No. 2020-0004 (Del. Ch. Jan. 3, 2020), 2020 WL 1575561 (attached as Ex. A to Mem. of Law in Supp. of Defs. Alastair Crawford's & Patrick Miles's Mot. to Dismiss the Am. Compl., ECF No. 10-2) ["Crawford Lawsuit Am. Compl."].

[79] *Id.* ¶¶ 1–7.  Plaintiffs requested the Chancery Court order defendants to disgorge all monies received from their wrongful conduct; defendants jointly and severally liable for money damages; Stream to provide an accounting of all financial matters and transactions related to the company, as well as all transactions involving defendants, at defendants' expense; and Stream, through the Rajan brothers, their father, and their family holding companies, to amend its corporate governance, articles of incorporation, and/or bylaws to restructure the Board to allow plaintiffs and other shareholders to appoint three Board

Crawford and Miles argue that Mathu does not state a cause of action for abuse of process.  Although he labels the count "Abuse of Process," he appears to make both a statutory cause of action for wrongful use of civil proceedings and a common law cause of action for abuse of process.  Thus, reading the complaint liberally given Mathu's *pro se* status, we shall assume he intended to state both claims.

A cause of action for abuse of process and a cause of action for wrongful use of civil proceedings are different.  The former arises from the improper use of process after the lawsuit is commenced, that is, during the litigation.  The latter is based on the wrongful filing of the lawsuit in the first place for an improper purpose.

To state a statutory claim for wrongful use of civil proceedings, a plaintiff must allege facts showing that the defendant initiated a lawsuit against him primarily for an improper purpose and the underlying proceedings were terminated in his favor.  42 Pa. Cons. Stat. § 8351; *Werner v. Plater-Zyberk*, 799 A.2d 776, 786 (Pa. Super. Ct. 2002) (citations omitted); *see also Miller v. St. Luke's Univ. Health Network*, 142 A.3d 884, 895 (Pa. Super. Ct. 2016) (citations omitted).

Mathu alleges that the Crawford lawsuit is still pending.[80]  Because the proceeding has not yet been terminated, let alone in his favor, Mathu cannot state a statutory claim for wrongful use of civil proceedings.

---

members and to eliminate the 10x voting rights of the Class B voting stock.  *Id.*, Request for Relief ¶¶ (a)–(d).  Plaintiffs also sought the award of compensatory damages, expectation and lost opportunity costs damages, punitive damages, prejudgment interest, all fees and costs incurred in this action, and any other relief the court deems just and proper.  *Id.*, Request for Relief ¶¶ (e)–(j).

[80] Am. Compl. ¶¶ 30–31.

To make out a common law cause of action for abuse of process, the plaintiff must allege that the defendant (1) used legal process against him; (2) for a purpose other than for which it was designed; and (3) caused him harm.  *Werner*, 799 A.2d at 785 (quoting *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998)); *see also McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987) (citations omitted).

As the Chancery Court found, Stream investors, including Crawford, had ample reasons to take steps to save Stream from financial collapse.  The Crawford lawsuit was an effort to do so.  The Crawford plaintiffs alleged that the Rajan brothers were mismanaging Stream and lying to investors while Stream was floundering.  If Stream folded, the investors would have lost their investment.  Filing and prosecuting a lawsuit under these circumstances is neither for a wrongful purpose nor abusive.

Mathu does not allege facts that show Crawford and Miles pursued the lawsuit for a purpose other than for which it was designed.  He appears to claim that the lawsuit was intended to give Crawford leverage in his takeover attempt.  That is not improper.  Filing a lawsuit after negotiations to resolve a genuine dispute failed is not abusive.

With respect to amending the complaint to add new defendants or to remove the names of nonparty entities was not abusive.  There was a basis for adding Mathu's parents because they were involved in the related companies holding the majority of Stream stock.  Indeed, the Crawford's amended complaint discusses how the Rajan brothers and their father, Rajan Rajan, used Akshaya, a family holding company, to control Stream.[81]  Rajan Rajan and Jeeva, his wife, are also the managers of Akshaya.[82]

---

[81] Crawford Lawsuit Am. Compl. ¶¶ 60–61, 63, 65–66, 77.

[82] *Id.* ¶¶ 63–64.

Akshaya is the majority controlling shareholder of Mediatainment.[83]   Mathu is Mediatainment's sole officer and director.[84]   Thus, through their control of Akshaya, the Rajan brothers and their father controlled Mediatainment.[85]

What Mathu contends was abusive could have been presented to and addressed by the Delaware court in that case.  The defendants, including Mathu, could have moved to transfer the case, raising the forum selection clause.  They also could have moved to strike parties.

The amended complaint in this case is devoid of any allegation of harm caused by the prosecution of the Crawford lawsuit.  That action is ongoing.  The tactics Mathu complains Crawford and Miles employed in that action have not resulted in any harm to him.  Because Mathu has not alleged facts showing that Crawford and Miles filed the Crawford lawsuit for any wrongful purpose, improperly used the process, or that their litigation tactics caused him harm, we shall dismiss the abuse of process claim.

*Defamation*

Mathu claims Crawford defamed him in the course of the Crawford lawsuit, and both Crawford and Gollop defamed him in communications with other investors and Stream employees, casting him as dishonest, untrustworthy, and a liar.  According to Mathu, they also accused him of fraud and embezzlement.

To state a claim for defamation, a plaintiff must allege the defendant made a defamatory statement about the plaintiff and published it to a third-party who understood it to be defamatory.  *Bennett v. Itochu Int'l, Inc.*, 682 F. Supp. 2d 469, 476 (E.D. Pa. 2010)

---

[83] *Id.* ¶ 66.

[84] *Id.* ¶ 60.

[85] *Id.* ¶ 78.

(citing *Tucker v. Fischbein*, 237 F.3d 275, 281 (3d Cir. 2001) (applying Pennsylvania law)); *see also* 42 Pa. Cons. Stat. § 8343; *Bell v. Mayview State Hosp.*, 853 A.2d 1058, 1061 (Pa. Super. Ct. 2004) (quoting *Brown v. Blaine*, 833 A.2d 1166, 1173 n.14 (Pa. Commw. Ct. 2003)).   The plaintiff must also allege an injury.   *Bell*, 853 A.2d at 1061 (quoting *Brown*, 833 A.2d at 1173 n.14).   Whether a statement is defamatory is a question of law for the court.   *Bell*, 853 A.2d at 1061–62 (quoting *Feldman v. Lafayette Green Condo. Ass'n*, 806 A.2d 497, 500 (Pa. Commw. Ct. 2002)).

With respect to the statements Crawford made during the Crawford lawsuit, Mathu alleges that Crawford "made numerous allegations which were openly and blatantly wrong and rose to the level of knowing misrepresentation and or fraud" in those proceedings.[86]   Those statements are protected by judicial privilege.

Statements made in the regular course of judicial proceedings are protected by the absolute judicial privilege.   *Post v. Mendel*, 507 A.2d 351, 355 (Pa. 1986); *Richmond v. McHale*, 35 A.3d 779, 784–85 (Pa. Super. Ct. 2012) (citations omitted).   The privilege applies to formal and informal communications, including those made in pleadings, preliminary conferences, negotiations, and correspondence between counsel.   *Binder v. Triangle Publ'ns, Inc.*, 275 A.2d 53, 56 (Pa. 1971); *Richmond*, 35 A.3d at 784–85 (citations omitted).

The only statements that can serve as the basis for Mathu's defamation claim are those that were made outside the Crawford lawsuit.   Mathu alleges that Crawford called him a "liar";[87] told "everybody that [he] allegedly w[as] defrauded to invest" in Stream;[88]

---

[86] Am. Compl. at 26, ¶¶ 63–83.

[87] Am. Compl. ¶ 8.

[88] *Id.* ¶ 41.

and said he was "dishonest" and could not "be trusted."[89]  He claims that Gollop called

him a crook.[90]  Mathu also alleges that Crawford and Gollop communicated with investors

and employees that he "was untrustworthy with their money and that he . . . would simply

take it or embezzle it."[91]

Statements that Mathu is a liar or implicating him in the commission of a crime may

be defamatory as a matter of law.  *See Burns v. Cooper*, 244 A.3d 1231, 1237 n.7 (Pa.

Super. Ct. 2020) (citations omitted).   But, Mathu has not specified, as he must, when,

how, or to whom those allegedly defamatory statements were made.  *Smith v. Sch. Dist.

of Phila.*, 112 F. Supp. 2d 417, 7429 (E.D. Pa. 2000) ("The complaint on its face must

'specifically identify what allegedly defamatory statements were made by whom and to

whom.'" (quoting *Manns v. Leather Shop Inc.*, 960 F. Supp. 925, 929 (D.V.I. 1997))).

Lacking specificity, the defamation count must be dismissed.

### Leave to Amend

Mathu has requested leave to amend his amended complaint.[92]   Where the

complaint does not withstand a 12(b)(6) motion, a curative amendment must be allowed

unless amendment would be inequitable or futile.  *Alston v. Parker*, 363 F.3d 229, 235

(3d. Cir. 2004) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002));

*see also Estate of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir.

2014) (quoting *Phillips*, 515 F.3d at 245).   An amendment is futile if the proposed

amendment would still fail to state a claim upon which relief can be granted.  *Shane v.*

---

[89] *Id.* ¶ 187.

[90] *Id.* ¶ 189.

[91] *Id.* ¶¶ 9–10.

[92] Mem. of Law in Opp'n of Defs.' Mot. to Dismiss the Am. Compl. at 15, ECF No. 24.

*Fauver*, 213 F.3d 113,115 (3d Cir. 2000) (quoting *In re Burlington Coat Factory,* 114 F.3d at 1434).

We shall grant Mathu leave to file a second amended complaint to assert a defamation claim only.  If he does so, he must articulate the factual bases for his claim, identifying what defamatory statements Crawford and Gollop made, when they were made, and to whom they were made.

As to the remaining causes of action, Mathu cannot cure the deficiencies.  Because amendment would be futile, we shall deny him leave to amend those counts.

### Conclusion

Because Mathu Rajan has not and cannot state causes of action for tortious interference, civil conspiracy, and abuse of process, we shall dismiss those counts with prejudice.  We shall dismiss the defamation count without prejudice against defendants Alastair Crawford and Kevin Gollop, and grant leave to amend that count as to those defendants only.

The court may dismiss claims as to non-moving defendants if the claims against the non-moving defendants suffer from the same defects raised in the moving defendants' motions.  *Minn. Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x 143, 148 (3d Cir. 2011) (quoting *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980) (stating that the court may *sua sponte* dismiss a claim as to non-moving defendants where the inadequacy of the claim is clear)).  A claim against a non-moving party may be dismissed if the claims against all defendants are "integrally related" or where the non-moving defendants are in the same position as the moving defendants.  *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993) (citations omitted).  Therefore, we shall apply our analysis

of the motions to dismiss to Asaf Gola, Kevin Gollop, and Kristoff Kabacinski to the extent the deficiencies cited in the motions apply to them.