# IN THE UNITED STATES DISTRICT COURT

# FOR EASTERN DISTRICT OF PENNSYLVANIA

MATHU RAJAN                                          )
                        Plaintiff,          )
                      v.              )   C.A. No. 2:2021cv01456
ALASTAIR CRAWFORD, PATRICK MILES,        )
KEVIN GOLLOP, KRZYSZTOF                   )   JURY TRIAL DEMANDED
KABACINSKI,                               )
ASAF GOLA, and SHADRON STASTNEY           )
                  Defendants           )

## <u>PLAINTIFF'S ARGUMENTS FOR CAUSE TO NOT STAY THIS ACTION</u>

This honorable Court ordered "…THAT NO LATER THAN 11/29/22, THE

PARTIES SHALL FILE MEMORANDUM OF LAW SHOWING CAUSE WHY

THE PROCEEDINGS SHOULD NOT BE STAYED PENDING RESOLUTION

OF THE STREAM AND CRAWFORD LAWSUITS PENDING IN THE

DELAWARE COURT OF CHANCERY."  Plaintiff, Mathu Rajan, Pro Se,

submits this memorandum in response to that Court order.

## <u>Table of Contents</u>

I.   **Preliminary Statement**.................................................................................. 2

I.   **Relevant Procedural History** ......................................................................... 3

II.  **Relevant Factual Summary** ........................................................................... 3

III. **Argument** ......................................................................................................... 7

A.  Plaintiff's case is seeking monetary relief for himself as opposed to all of the other lawsuits which are for other relief and also involve other parties. .............. 7

B.  If this Honorable Court denies a stay in this action, Plaintiff seeks leave of Court to further amend his amended complaint..................................................14

C.  If the Court deems a stay appropriate in this case, Plaintiff respectfully requests that permission for right to appeal is granted to him immediately. .......14

**IV.   Conclusion**................................................................................................15

## I.      Preliminary Statement

Defendant's actions caused harm to not only Plaintiff but also to other employees who worked over ten years and earned stock options, investors who supported the development of the technology, vendors who helped the company grow, and customers.  This lawsuit <u>should not be stayed</u> as a result of the other lawsuits in the Delaware Court of Chancery or elsewhere. There are already many more lawsuits filed since the time the appeal in this matter started and more will likely come in the near future.  This lawsuit is different[1] from all of the other lawsuits that already exist and those that may come in the immediate future.

If this lawsuit is stayed, Plaintiff will suffer enormous prejudice as he loses his place in line to get a judgment against Defendants.  Plaintiff does not think

---

[1] This lawsuit seeks only compensatory and punitive damages for Plaintiff for the loss of his employment contract and loss of equity due to Defendants' unlawful conduct.  All the other lawsuits either seek "control" over property of Stream TV, Plaintiff's company or money for themselves.

Defendants will be able to pay the other plaintiffs in the other lawsuits. Defendants have been sued numerous times and all those Plaintiffs should be allowed to skip ahead of the line if this case is stayed.

## I.  Relevant Procedural History

This case was initiated in Philadelphia State Court but was removed by Defendant Crawford to this Federal District Court on or about March 26, 2021. Plaintiff, proceeding Pro Se, joined several other Defendants by amendment as of right on or about April 15, 2021. All of the Defendants who are represented by counsel entered their appearance in this case and moved to dismiss Plaintiff's action on or about April 30 – May 19, 2021. After full briefing and many months after, this Honorable Court dismissed Plaintiff's suit and denied an extension to file an appeal on or about February 16, 2022. An appeal was taken to the Third Circuit Court of Appeals which overturned and sustained this Court's decision in part. The Third Circuit Court of Appeals overturned the dismissal of the civil conspiracy and tortious interference claims and sustained the dismissal of the claims of defamation and abuse of process. This Court has ordered all of the parties to show cause why this action should not be stayed pending resolution of lawsuits in other courts.

## II.  Relevant Factual Summary

This case is very simple unlike other cases in other jurisdictions:  is Plaintiff entitled to monetary relief through compensatory and punitive damages. Plaintiff has repeatedly asserted that all Defendants acted in their own self-interest, greed, and impatience. Defendants Stastney and Crawford were the ring leaders.  Their unlawful plotting is revealed by an email they exchanged between themselves that outlined how they could take over management control, deprive Plaintiff of anything, and obtain new money from prior investors (that email string is attached hereto as **Exhibit A**.  Their unlawful plot was executed almost exactly like Stastney and Crawford planned.  The remaining Defendants were their puppets who they rewarded with cash and equity and prominent positions in employment.

Defendant Stastney began pursuing a lawful course of action with Court oversight in a debt foreclosure action before the Delaware Superior Court at <u>SLS Holdings VI, LLC. v. Stream TV Networks, Inc.</u> docketed at N20C-03-225 MMJ CCLD. The Defendant in that action is Stream TV Networks, Inc. ("**Stream TV**"). Stream TV then counterclaimed asserting claims based on a written document for the conversion of Defendant Stastney's debt[2] into Stream TV equity and promissory estoppel since many investors were told conversion would happen that induced them into equity investments.  That court informed Stastney that that

---

[2] The alleged debt of Defendant Stastney is actually held by his company SLS Holdings VI, LLC ("**SLS**").  It/he chose to invest in Stream TV only through senior debt and not equity like most other investors.

action would not be scheduled for trial for two years or more which caused Stastney to change course.

Defendant Stastney then pivoted with Defendant Crawford and bought the assistance of the other Defendants to take the assets/property of Stream TV without court oversight. Defendants entered into a private contract they called the "**Omnibus Agreement**" and tried to evade court oversight or any oversight by Plaintiff or shareholders of Stream TV. Defendants Gola and Gollop executed the private Omnibus Agreement without involvement or knowledge of Plaintiff or most of the shareholders of Stream TV. The Omnibus Agreement purported to transfer all of the assets/property of Stream TV to a new company which Defendant Stastney would create and populate. On or about June 15, 2022, the Delaware Supreme Court sitting *en banc* unanimously ruled that the entire Omnibus Agreement was invalid *ab initio* and any trial court rulings thereon were overturned/overruled.

Defendants Gola and Gollop are directors of Defendant Stastney's new company and Defendant Gola is the head of capital markets also.   Defendant Kabacinski was[3] the Chief Executive Officer for Defendant Stastney's new

---

[3] Investors have reported that Kabacinski was fired by Stastney after he worked for a couple of months and had helped the coup.  He even invested in Stastney's new company.  An employee named Banerjee also helped Stastney then was let go and has filed a lawsuit against him.  Whether that and other prior lawsuits against Stastney are beginning of a negative pattern should be an issue for consideration in this lawsuit.

company with a salary of over USD $400,000 per annum. Defendant Stastney is the Executive Chairman of the Board of Directors of his new company with an annual salary of $360,000. Defendant Stastney's new company has also hired many former employees of Stream TV, some before and some after the signing of the Omnibus Agreement. Defendant Crawford attempted to issue for himself four million shares of Stream TV stock and two million warrants for Stream TV equity for suing Plaintiff and helping in what one defendant called a "coup".

After the Delaware Supreme Court ruling, the Delaware Trial Court issued an order that specified that Defendant Stastney's new company, Seecubic, Inc., was to "…restore Stream TV's assets to Stream….".  The Delaware Trial Court issued a Temporary Restraining Order against Defendant Stastney's company, Seecubic, Inc., and all of those "acting in concert" from taking any action to sell[4] the assets of Stream TV. Defendant Stastney and his new company have also been held in "**contempt**" for not following the Delaware Trial Court's orders for the return of property of Plaintiff's former employer.  This case is about Plaintiff's loss of gainful employment and equity rights with Stream TV which ended through Defendants' carefully planned actions. However, Defendants' "credibility" is very suspect since they have been held in contempt by another Court.  Plaintiff seeks the

---

[4] Stastney and his new company tried to sell the assets/property they illegally acquired from Stream TV.  They went as far as noticing the sale through an investment banker before they were stopped.

opportunity to show a jury that Defendants are not good people, and their unlawful acts are catching up with them.  Defendants will be subject to damage awards, and they will be unable to pay all plaintiffs.  Mathu Rajan should not be a litigant denied an opportunity to collect since he filed his lawsuit more than a year and half ago.

The lawsuits against some or all of Defendants are numerous and more are expected shortly.  All of the other lawsuits seek monetary relief for other persons or entities or control and ownership of Stream TV's assets and/or property.  There are six (6) other lawsuits now and many more will likely follow since many investors believe that they were defrauded by Defendants Stastney, Gollop and Gola as directors of Seecubic, Inc.

## III.    Argument

### A. Plaintiff's case is seeking monetary relief for himself as opposed to all of the other lawsuits which are for other relief and also involve other parties.

The lawsuits are mentioned below, and Plaintiff believes that there will be many more lawsuits in the coming weeks. The lawsuits have a description in the listing below of what is claimed therein. All of the lawsuits either a) seek monetary relief for other parties other than Plaintiff or b) seek control of the assets/property of Plaintiff's employer Stream TV. It would be incorrect to conclude, without a

finding of fact, that monetary damages to other parties including Plaintiff's

employer Stream TV are the same as monetary relief to Plaintiff himself as an

individual. Any monies recovered by Stream TV against the Defendants in its case

would belong to the shareholders of Stream TV which number more than 200

entities and individuals.

Some of the current lawsuits are:

1. Defendant Crawford and approximately 8 others filed a complaint against Plaintiff Mathu Rajan, Raja Rajan and Suby Joseph individually, but not Stream TV, on approximately January 3, 2020, in Delaware Chancery Court. Defendant Crawford amended that complaint to add Plaintiff's parents and also added approximately 42 co-plaintiffs which he to solicited to join him. That case was also in front of Delaware VC Laster who also presided over a separate lawsuit determining the ownership of Stream TV assets/property. That lawsuit is mentioned below as the Omnibus Action. The Delaware Chancery Court No. is 2020-0004-JTL. *Alastair Crawford et al. v. Mathu Rajan, Raja Rajan, Suby Joseph, Rajan Rajan, Jeeva Rajan, Mediatainment Inc and Akshaya Holdings LLC.* ("**Crawford Lawsuit**") That case has been sitting dormant since March 2020 with absolutely no activity. Plaintiff believes this lawsuit accomplished what Crawford wanted as it turned many people against Plaintiff until the Delaware Supreme Court ruled unanimously sitting *en banc.*

2. Defendant Stastney's investment company SLS filed a collection action against Stream TV in Delaware Superior Court. Stream TV counter-claimed that the collection action was improper in that SLS had executed a debt-to-equity conversion contract in 2018 which was still valid and sought a declaratory judgement finding of promissory estoppel in that many investors and management personnel "relied" on the SLS debt being converted to equity and being eliminated. That action has not been pursued since the counterclaims were asserted in approximately June 2020. The Delaware Superior Court No. is N20C-

03-225-MMJ CCLD *SLS Holdings VI, LLC v. Stream TV Networks, Inc., et al.* (the "**Stastney Action**")

3. Stream TV sought an injunction against Defendant Stastney's new company SeeCubic Inc. since there were assets being taken away in later Summer and Early Fall of 2020. SeeCubic Inc. joined Plaintiff Mathu Rajan and Raja Rajan as third-party Defendants alleging that they "converted" property that belonged to Seecubic, Inc. under the Omnibus Agreement. Instead of issuing an injunction on behalf of Stream TV, VC Laster, the same Judge in the Defendant Crawford lawsuit mentioned above, issued a preliminary injunction in favor of SeeCubic Inc. on approximately December 8, 2020. The preliminary injunction stated that Plaintiff Mathu Rajan and Raja Rajan were not to interfere with SeeCubic[5], Inc. taking all of the assets of Stream TV. Approximately one year later (December 2021) that preliminary injunction was made permanent through a partial summary judgment ruling. VC Laster made the preliminary injunction permanent but dismissed most of the conversion claims and indicated that summary judgement could not be granted. He also ruled that the lawsuit could be taken up on appeal since the conversion claims were related to the validity or invalidity of the Omnibus Agreement which was the central issue for appeal. The Chancery Court No. is 2020-0766-JTL. The Delaware Supreme Court unanimously, sitting *en banc*, overturned the Omnibus Agreement and the Trail Court rulings thereon on or about June 15, 2022.  This case is still in front of the Trial Court to follow the Mandate from the Supreme Court. *Steam TV Networks, Inc. v. Seecubic Inc.; Seecubic Inc. v. Stream TV Networks, Inc. and Mathu Rajan and Raja Rajan (Third Party Defendants)* ("**Omnibus Action**").  A Court appointed receiver has been established to oversee the return of the assets/property to Stream TV. The claims of conversion against Plaintiff and his brother Raja are dismissed.

4. Stream TV has sued Defendants Stastney, Morton, Kabacinski and others in Federal Court in the District of Delaware seeking monetary

---

[5] Plaintiff wants to note that Stastney named his new company SeeCubic Inc which is derived from Stream TV's subsidiary called SeeCubic, B.V. which is registered in the Netherlands and houses many of the 3D engineers.

damages. Service of process is just now occurring in this action as many defendants reside oversees. The Federal Court No. is 22-851-RGA. This complaint was amended on approximately July 28, 2022, to add more Defendants. *Stream TV Networks, Inc. v. Shadron Stastney, Arthur Leonard Robert Morton, Alastair Crawford, Asaf Gola, Kevin Gollop, Krzysztof Kabacinski, Patrick Miles, Robert Petch, Hawk Investments Holdings Limited and John Does 1-75* (the "**Stream TV Damages Action**").

5. Hawk Investment Holdings Limited ("**Hawk**" - Bob[6] Morton's investment company) has filed a new lawsuit in Delaware Chancery Court against Plaintiff and his brother Raja Rajan on or about August 18, 2022. Hawk was the second lienholder of Stream TV which primarily drove the execution of the Omnibus Agreement, which has now been found invalid.  That lawsuit is also against the Rajans' family holdings company called Akshaya Holdings Limited and also against an inactive holding company called Mediatainment, Inc. Stream TV's lawyer will be representing all of the Defendants in that case and believes that the lawsuit was filed entirely due to the fact Defendants do not like the Delaware Chancery Court's rulings following the Delaware Supreme Court's ruling. The Delaware Court Case No. is 2022-0733. *Hawk Investment Holdings Ltd. v. Mediatainment Inc., Akshaya Holdings LLC, Mathu Rajan, Raja Rajan, and Steam TV Networks, Inc.* (the **"Bob Morton Action"**).

6. Kaushik Banerjee was Stream TV's lead engineer in Silicon Valley, CA.  Defendant Stastney solicited him and offered him employment terms with a new company he planned to start while both were still employees of Stream TV.  Kaushik Banerjee has now sued Defendant Stastney' new company, SeeCubic, Inc. claiming that he was used to help Defendant Stastney and now is not being paid. He calls the whole transaction based on the Omnibus Agreement a planned "sham." His

---

[6] Bob Morton has been sanction by the UK securities government action called the cold shoulder.  His sanction is rarely levied but the authorities found it appropriate to levy against him since his conduct was so extreme.  He reportedly gave information that he knew to be false to the authorities.  The sanction for cold should can be found in an article at Takeover Panel gives the cold shoulder | Fieldfisher

lawsuit is docketed at County of Contra Costa, C21-02074, and alleges 1) Fraud (False Promise), 2) Fraud (Misrepresentation), 3) Negligent Misrepresentation, 4) Breach 0f Contract, 5) Breach of Covenant of Good Faith and Fair Dealing, 6) Labor Code -Waiting Time and Penalties, and 7) Unfair Competition. (the "**Banerjee Lawsuit**").

In *Just Enters. v. O'Malley & Langan, P.C.*, 560 F. Supp. 2d 345 (M.D. Pa. 2008) the, allowing the case to go forward in this court."  The Seventh Circuit Court clarified that "…a suit "is duplicative only if it involves the 'same claims, parties, and available relief.'"  *Chrysler Credit Corp. v. Marino*, 63 F.3d 574, 578 (7th Cir. 1995) (quoting *Serlin v. Arthur Andersen & Co.*, 3 F3d 221, 223 (7th Cir. 1993)).  Plaintiff Mathu Rajan was only a party in two cases.  One he was disissed after the Supreme Court ruled that the private Omnibus contract that Defendants used to seize the assets/property of Stream TV was never valid.  He also a party to Crawford lawsuit but that involves none of the claims in this case.

The Crawford Lawsuit primarily involves Defendant Crawford desiring changes to the corporate charter of Stream TV.  The corporate charter had a high voting class of stock  since 2013 with the written board consent of Stastney.  Crawford, in his lawsuit, asks the Delaware Court, in pertinent part to

Order the Rajan Brother Defendants, Defendant Rajan Rajan, Defendant Mediatainment, and Defendant Akshaya to cause Stream TV to underline its corporate governance to: (i) restructure its Board such that Plaintiffs and other shareholders who are not the Rajan Brother Defendants, Defendant Rajan Rajan, Defendant Mediatainment, or Defendant Akshaya may select

without votes from these Defendants three members of the Board; (ii) amend
Stream TV's articles of incorporation to and/or bylaws to so provide; and/or
(iii) amend Stream TV's articles of incorporation and/or bylaws to eliminate the
10x voting rights of the Class B Voting Stock; (emphasis added)

Crawford obtained what he wanted until the Supreme Court ruled and undid his
accomplishments.  His lawsuit was only a ploy since there has been no activity for
almost three years in the Crawford lawsuit!

The Stastney Action is a lawsuit which involves Defendant Stastney attempting
to foreclose on his alleged debt and renege on the written debt to equity conversion
agreement. The Omnibus Action involves a continuing fight for control over the
assets/property of Stream TV which it created over ten (10) years' time. The
Stream TV Damages Action is a lawsuit for monetary damages but the recovery in
that action belongs to the shareholders of Stream TV which number over two
hundred (200). The Bob Morton Action involves his attempt to fight for ownership
and control over the Stream TV assets in the Omnibus Action lawsuit. The
Banerjee Lawsuit involves a California former employee seeking financial
damages from parties including Defendants Stastney, Kabacinski, Stastney's new
company SeeCubic, Inc. and others identified as John Doe(s).

In carrying his burden of proof, Plaintiff can use other Courts' findings and
information to establish his claims to a jury. For example, the finding of
"contempt" against Defendant Stastney would show his "intentional behavior" by

refusal to return the assets/property after the Delaware Supreme Court ruling.

Plaintiff's claims against Defendants are getting stronger by the day[7].

In *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, No. 12-cv-1107(GMS), 2014 U.S. Dist. LEXIS 47430 (D. Del. Apr. 7, 2014) the Court noted that:

> To determine whether staying a case is appropriate, the court balances the following three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and [a] trial date has been set." *Bayer Intellectual Prop. GmbH v. Warner Chilcott Co., No. 12-1032-GMS, 2013 U.S. Dist. LEXIS 172735, at *3-4 (D. Del. Dec. 9, 2013)* (quoting *First Am. Title Ins. Co. v. MacLaren LLC, No. 10-363-GMS, 2012 U.S. Dist. LEXIS 31508, at *4 (D. Del. Mar. 9, 2012)).*

Requirement three (3) is not applicable and requirements one (1) and two (2) are in favor of not granting a stay.  A stay would unduly prejudice Plaintiff and would not simply any issues for trial.  Plaintiff is an individual employee and his claims for tortious interference and civil conspiracy have very specific elements that he must prove that will not be simplified by another Court as he is not a party to any other action.  There is no other court case that narrows what Plaintiff must prove in this case.

The other cases in other jurisdictions are different from the instant case.

---

[7] Stastney does not want to give the assets/property back to Stream TV at any cost even if ordered by Courts to do so.  Gola and Gollop are directors of Stastney new company and Crawford is one of the largest shareholders.  Even after they are caught, their continued refusal only shows Plaintiff's assertions against them are completely true.

Staying this case until resolution of the other lawsuits would be inappropriate and an abuse of discretion.  Such a stay would prejudice Plaintiff as mentioned.

B. <u>If this Honorable Court denies a stay in this action, Plaintiff seeks leave of Court to further amend his amended complaint.</u>

As the Court knows, leave to amend the complaint is to be liberally granted under case law and rule 15. No discovery in this lawsuit has been conducted and all of the parties have not provided their voluntary discovery disclosures. The Court has not even held the initial scheduling conference outlining the deadlines for the case. No party can claim any degree of prejudice.

Plaintiff seeks permission to amend his complaint to eliminate the two legal claims of defamation and abuse of process that the Third Circuit affirmed as dismissed. Plaintiff also wants to tighten up the new amended complaint from having numerous averments that are not necessary for notice pleadings.

C. <u>If the Court deems a stay appropriate in this case, Plaintiff respectfully requests that permission for right to appeal is granted to him immediately.</u>

If a stay is granted, then Plaintiff seeks this court enter an order granting permission to take an appeal.  This would be an interlocutory order and granting permission for an immediate interlocutory appeal would be appropriate.  Plaintiff respectfully does not believe that the Appellate Court kept in the lawsuit alive based on claims of civil conspiracy and tortious interference, only to have it

delayed so claims in other courts can be heard first even if those lawsuits were filed later.

## IV.    Conclusion

**WHEREFORE**, for the foregoing reasons, Plaintiff respectfully requests that this lawsuit not be stayed for any reason and that his Proposed Order be granted allowing him to file an amended Complaint and start the lawsuit.

Date: November 29, 2022

By:
      Mathu Rajan, Pro se

2009 Chestnut Street
Philadelphia, PA 19103
streamtvnetworksinc@gmail.com

15

# EXHIBIT A

(1.17.2020 Email of Stastney to Crawford)

**From:**      Shad Stastney [slstastney@hotmail.com]
**on behalf of**   Shad Stastney <slstastney@hotmail.com> [slstastney@hotmail.com]
**Sent:**      1/17/2020 3:17:14 AM
**To:**        Alastair Crawford [alastair.crawford@gmail.com]
**CC:**        netTALK netTALK [sstastney@gmail.com]
**Subject:**    Re: Proposed transaction steps and terms


Good on both-on shareholders, didn't mean to imply there was a deadline.  We will start bringing them in Feb. 1, it can continue as you noted below.

On engagement, good, understood.  Want me to rewrite and resend to you?

Shad Stastney

> On Jan 17, 2020, at 8:12 AM, Alastair Crawford <alastair.crawford@gmail.com> wrote:
>
> Just two issues;
>
> 1. We don't have a list of all shareholders or contact details today, and many contact details may be out of date, or shareholders maybe dead even, given the tight timeline what happens to a good actor shareholder who wasn't contactable or didn't understand the background by Feb 1 could we have maintain a good actor share provision in escrow with an independent reconciliation committee that reviews applications post feb 1 to check no rajan foul play or post feb 1 secondary market arbitrage etc with discretion to swap over for perhaps 12 months.)
>
> 2. Better to appoint Robert Petch and Paddy Miles (as well as Ruffena) as I couldn't have an engagement if I'm on the board, but obviously I would assist them fully.
>
> Alastair
>
>
>> On 17 Jan 2020, at 06:46, netTALK netTALK <sstastney@gmail.com> wrote:
>>
>> Alastair,
>>
>> I would suggest the following plan and terms for the reorg.  Each step annotated with rationale where relevant.  If I misstated anything or am missing anything, or if you'd prefer to say anything differently, I wouldn't be surprised given the hour, so please let me know.
>>
>> Thanks!
>>
>> Shad
>>
>> Proposed Course of Action
>>
>> Step 1.   Week of 1/20/20
>>
>> A.   Agreement on terms reached among SLS, Hawk and key shareholders
>> B.   SLS and Hawk send joint default notice and demand letter prepared by Skadden to Stream, indicating immediate default on all existing debt and demand for payment in full.  As an alternative, Stream may agree, by 1/24, to deliver all its assets to a newly-formed holding company ("Newco") by 2/1, in exchange for (I) 3 mm shares in Newco, and (ii) a release from the pending Delaware litigation for Stream and its principals, dependent on compliance with future non-compete and non-solicitation by Stream and its principals.
>> C.   Newco formed, with initial capitalization by SLS and Hawk of (I) common stock in amounts equal to their respective current common stock holdings in Stream, and (ii) debt equal to each of their actual net funded amounts into Stream, with imputed interest of 2% from such respective funding dates through date of Newco formation. SLS debt will be senior unsecured, 5 year term, bearing interest at 2% per annum going forward. Hawk will be senior subordinated, 5 year term, bearing interest at 2 % per annum going forward.  All such debt will be convertible at the option of the holders at any time at $1.50 per share, and will be convertible at the option of Newco upon either (I) an investment by a single institutional investor or group of at least $50mm, convertible upon the same terms as such investment, or (ii) a public listing, convertible at such listing price. Debt bears interest at 2% to avoid higher imputed interest for tax purposes, and to ensure it is respected as actual debt.
>>
>> Step 2.   Week of 1/27
>>
>> A.   Following agreement by Stream, all existing shareholders of Stream TV (other than the Rajans, directly or indirectly) will be offered the ability to swap old Stream shares for Newco shares on a 1:1 basis.  In exchange, shareholders will waive all warrants and all claims against Stream.  Any non-consenting shareholders will simply continue to own their current interests in Stream.  The Roughley debt will be [assumed by Newco as subordinated debt, and otherwise will have the same terms and conditions as

the SLS and Hawk debt].  The expenses of pursuing the Delaware claim and of Skadden's set-up work will be
assumed by Newco as a general payable, payable to those shareholders who funded it.
>> B.  Documents will be prepared and executed that will effectuate the transfer of all Stream assets to
Newco no later than Feb. 1, including ownership and control of all Stream subsidiaries
>> C.  All employees of Stream that are currently employed by subsidiaries of Stream that Newco wishes to
retain will continue to be employed by such subsidiaries.  All employees of Stream employed by StreamTV
Networks, Inc. directly that Newco wishes to employ will he hired by Newco effective Feb. 1.  All non-
desired employees will remain with StreamTV, or be terminated by the relevant subsidiary.
>> D.  The Board of Directors of Newco will be formed consisting initially of Alastair Crawford as
Chairman, Shad Stastney as Vice Chairman and CEO, and Andrew Roughley as Director and COO/CFO.  Newco
will assume the existing contract of Stastney, and will put in place an identical contract for Roughley.
>> E.  Ruffena and Alastair Crawford will be retained by Newco to undertake an immediate capital raise of
$1-5mm pounds, with the right to raise an additional $25mm pounds on such terms as may be agreed between
the parties
>>
>> Step 3.  Week of 2/4
>>
>> A.  Initial investment of $1-5mm closes into Newco, where all assets have been transferred effective
2/1.
>> B.  Newco shares are issued to all consenting  Stream shareholders 1:1, which assuming 100% compliance
will result in a Newco equity cap table of approximately 64mm shares, 0 warrants.  Subject to final
calculation, debt will equal approximately $7.5mm SLS, $53mm Hawk, $750,000 Roughley
>> C.  Negotiations will commence with any existing creditors of Stream whom Newco wishes to honor for
Newco to assume all or a portion of such obligation.  All other creditors remain with Stream.  The
existence of the SLS and Hawk debt will serve to ensure that creditors stay in line and manageable, and
will dissuade any claims from those creditors left behind.
>> D.  Newco continues documentation of any remaining asset transfers, under full power of attorney from
Stream.
>>
>>
>>
>> Shad Stastney